## BISSELL & CARVILLE v. LINDSAY, ET AL.

1. When property is conveyed to one, in trust for others, and is subsequently levied on as the property of the grantor, the trustee is not entitled to go into equity to restrain the creditor.

2. *Quere?* Whether a State Court can restrain a party to a suit in the Courts of the United States, or the officers of those courts, from making a levy; but however this may be, the Marshal may be sued in detinue, either at common law or under the statute, for the recovery of slaves owned by a stranger, but seized under execution; and the Marshal's refusal to accept a claim bond under our local statute does not invest a court of equity with jurisdiction.

Appeal from a decretal order of the Court of Chancery for the 19th District.

THE case made by the bill is this:

In 1814, at Charleston, South Carolina, Thomas Bennett, the elder, made his last will, whereby he devised a lot of land, situate in Charleston, and bequeathed two slaves, as well as $3,000 in money, to Thomas Bennett, the younger, in trust, that the rents and uses of the lot, wages and labor of the slaves, and the interest, avails and produce of the money, should go to, and be allowed to, and for the support and benfit of John S. Bennett and his wife, jointly, during their lives; and after the death of either, to the survivor in the same manner; and upon the death of the survivor, to the children of John S. Bennett, who shall survive him and his then present wife, and to his, her, or their assigns forever. But in case there should be no such surviving child or children, then to revert to the right heirs of the testator. The complainants charge, that the testators intention was, that the legacy was to be held by John S. Bennett, his son, free from his debts, contracts and engagements; also, that the will was deemed fully effectual for that purpose, by the laws of South Carolina. After the death of the testator, the will was duly admitted to probate, in South Carolina, the legacy assented to by the executors, and the trust assumed by Thomas Bennett, the younger, who continued to act until the year 1834, during which he resigned the trust, and the complainants being then substituted in his stead, assumed the execution of the trusts, and continued to discharge the duties of trustees when this bill was filed.

Sometime in 1834, John S. Bennett, being about to remove with his family to this State, applied to Bennett, the trustee, for him to invest the funds so bequeathed in slaves, and ten slaves were purchased by the trustee, for the sum of $3,360, to be held under the trusts of the will; at the same time the complainants received from the trustee $1,052, of the trust funds, to be invested in buying and settling lands, for the benefit of the trust. No bill of sale was executed by the trustee for the slaves, but merely an account current of

the trust estate with himself, showing a balance in his hands to the credit of the trust, of $1665.

The first wife of John S. Bennett died in 1817, leaving two children surviving, who are now respectively the wives of the complainants, and he afterwards married another, who was living when the bill was filed.

On the 23d March, 1836, the complainants assert that John Bennett was indebted to them, as trustees, in the sum of $1052, which he had received from the trustee, Thomas Bennett, as well as $430 which he had received on the sales of the two slaves specifically bequeathed to the trust, and being then in the possession of a plantation in Dallas county, and having expended these sums of money in its settlement, conveyed the plantation and the slaves so purchased with the trust funds, and one other slave, to the complainants. This deed was recorded in the County Court of Dallas, and the complainants assert, was intended to meet the same conditions as set forth in the will of the elder Bennett. The deed is exhibited, and purports to be in consideration of $10,000 paid by the complainants, and of the natural love and affection which he bears to his children, nine in number. The trust declared, is for the use of the grantor and his wife, during their joint lives, with remainder to the survivor, but to pay $3000 each, to the respective wives of the trustees, on the death of the grantor, which the deed asserts is in conformity with the will of their grandfather, Thomas Bennett. Each of the other children, as it became of age, or married, was to receive the same sum, and the residue, after the death of the grantor and his wife, to be equally divided between the surviving children and the issue of those who should be dead.

Another deed was executed by John S. Bennett, on the 19th October, 1839, conveying eight other slaves to the complainants, in trust, that Bennett and his wife should remain in their possession, and use, during their joint lives, and the survivor, during his or her life, with remainder to the children then living, of the said Bennett, and such as should thereafter be born. The consideration expressed is $5000, and natural love and affection, but the complainants assert the true consideration to be, the receipt by Bennett, since the

Bissell & Carville v. Lindsay, et al.

18th of November, 1834, of $1220, which he had received at various times, from the trustee, for the principal and balance due the trustee, and $445 interest thereon. This deed is not alledged to have been recorded, and the same allegation is made, that it was intended to be in conformity with the trusts declared by the will of the elder Bennett.

Rogers and Gray obtained a judgment against John S. Bennett, in the District Court of the United States, and Lindsay, one of the defendants, is alledged to pretend to have the control of it, by having paid to Rogers and Gray the amount of it, as an indorser of the note upon which it is founded. Lindsay, at the filing of the bill, either had, or was about to levy on the slaves conveyed by the deeds of 1836 and 1839. The complainants offered the deputy Marshal, to procure a bond to be executed to try the right of property to said slaves, which the said deputy said he would not receive, as he was instructed to accept none but a bond for the forthcoming of the slaves at Mobile.

The bill prays that Lindsay and the Marshal of the United States may be restrained by by injunction from proceeding against the slaves so conveyed to the complainants, and for further relief.

An injunction having been awarded, Lindsay answered the bill, denying any knowledge or information of the facts stated, except as to the execution of the deeds, and asserting them to be covinous, and intended to hinder, delay and defraud creditors. He also asserts a willingness to bring in the principal of the legacy, to be disposed of by the court, asserting that he is entitled to satisfaction out of all the uses vested in Burnett. He prays his answer may be considered as a demurrer to the bill, as containing no matter of equity, and pleads that the District Court of the United States, is the only one which can restrain him in the pursuit of satisfaction of its judgment.

The Chancellor dissolved the injunction, on the ground that the complainant had adequate relief at law, and from this decretal order the defendants took an appeal.

G. R. Evans, for the appellants, made the following points:

1. The State Courts have jurisdiction to enjoin a party

from proceeding to enforce a judgment in another court. [1 Kent's Com. 410 ; Brown v. Ogden, 6 Halst. 370 ; Slocum v. Maberry, 3 Wheat. 2·; 7 Mart. Lou. Rep. 416.

2. The court of equity has jurisdiction under the circum-. stances stated by the bill. [Calhoun v. Cozzens, 3 Ala. Rep. 498.

3. The answer not denying the circumstances out of which the equity arises, cannot dissolve the injunction. [Givens v. Frost, 4 Ala. Rep. 721.]

EDWARDS, contra.

GOLDTHWAITE, J.—1. The only title disclosed by the complainants to the slaves, the levy upon which is sought to be prevented by this bill, is a mere legal one, whatever may be its intrinsic value, against the execution creditor. As such, it is not the subject of examination in a court of equity, unless by reason of some particular circumstances, which prevent a court of law from giving adequate compensation in damages. [Story's Eq. § 709.] No such circumstances are set out in the bill, and the general question presented by it is, whether a court of equity will interfere to prevent a levy, upon the assertion that the property belongs to a stranger to the execution. We have recently held such interference to be improper, even at the suit of the *cestui que trust*, when there was a trustee invested with the legal title, [Marriott & Hardesty, et al. v. Givens, 8 Ala. Rep. 694 ;] and the same rule applies with full force to the trustee himself.·

2. Some stress is laid upon the allegation that the Marshal of the United States refused to allow the complainants to interpose a claim, as provided by our local statute, but in our judgment, this is a matter of no importance, because we cannot undertake now, to determine whether the Courts of the United States are bound to adopt our practice—that is a question which those courts will determine for themselves : conceding the Marshal was wrong, in refusing to allow the claim, it confers no jurisdiction upon our own courts, which, without it, they would not have, and the question may be considered as if our statute had no application. If the Marshal had levied upon the property of a stranger to the writ,

that gives him no authority to do so, and there can be no question he would be liable to an action of trespass or trover. It is unnecessary to determine whether our courts can interfere by injunction, to restrain a party in the courts of the United States, or the officers of those courts, from making levies, because we think the complainants have a clear legal remedy, by an action of detinue, either at common law or under our local statute, which renders it equivalent to the action of replevin.

We can see no reason why the Marshal, or his deputy, may not be sued in this action, as well as in trespass or trover, and the cases cited by the complainants' counsel show, that replevin will lie in those States where that writ is not obsolete. There is, then, no reason shown why the action of detinue was not resorted to, instead of this suit in equity, and as the question, whether the property is subject to the creditor or otherwise, can be determined in that form of action, the bill cannot be sustained.

Decree affirmed.