## THE GOVERNOR v. GIBSON.

1. A sheriff who levies a *fi. fa.* on personal property, may be sued in detinue by one who claims a legal right to it, and the action may be prosecuted in the ordinary mode, or under the statute.

2. A sheriff, when sued in detinue, for property on which he has levied, cannot be required to execute a replevy bond; it is sufficient if he give the party at whose instance he levied, notice, and call on him for indemnity. But such notice is not essential to his defence; it is sufficient that the property was taken from him under a writ regularly issued.

3. When process is in the hands of the coroner, commanding him to seize property in the hands of the sheriff, which is regular on its face, the latter need not look behind it, to inquire whether the pre-requisite steps have been taken, nor whether the coroner was duly authorized to act.

4. A levy by an officer, is not conclusive record evidence of the defendant's title, but raises a strong presumption against the officer, which he must repel by proof.

5. Sureties of a sheriff are not liable for a conversion of property by him two years before the bond was executed.

6. When a sheriff has indorsed a levy on property, which is afterwards taken from him by a writ, it is proper he should state the fact in his return; but his omission to do so, will not preclude him from proving the fact by evidence *aliunde*.

Error to the Circuit Court of St. Clair.    Before the Hon. J. D. Phelan.

DEBT on the official bond of Elbert L. Gibson, sheriff of St. Clair.    The breaches assigned are, that he levied certain writs of attachment of the plaintiff, against the Mississippi and Alabama Rail Road Co., on certain slaves; that judgments were obtained against the defendant in attachment, but that on demand, the slaves were not delivered to satisfy the judgments.

The defendants pleaded, that the slaves levied on were not liable to the attachments; also, that the slaves were taken out of the possession of the sheriff, by virtue of a writ in detinue, by the coroner. 2. That the plaintiff was notified of the fact, and informed that unless indemnity was given the sheriff would not execute the replevy bond required by the writ, in the hands of the coroner.    3. That the default of the sheriff, if any was made, accrued before the execution of the bond sued upon.    Other pleas were filed, which need not be noticed.

Upon, the trial, as appears from a bill of exceptions, the defendants introduced a duly certified copy of the suit in detinue, instituted by McAden, against Gibson, the sheriff, and the judgment thereon dismissing said suit.    The plaintiff objected to its introduction, as illegal, and irrelevant, but the court overruled the objection, and he excepted.

It was proved that the coroner, in whose hands the writ of detinue was, had no other authority to seize the slaves, than the written indorsement which appears on the writ, by the judge of the county court, and it was proved that the coroner had not executed any bond, or taken the oath required by law, and his authority to act was under a special appointment by the judge of the orphans' court.

No bond was produced, as having been executed by McAden previous to obtaining the writ, but the coroner swore there was a bond taken by him from McAden, and that he had returned it with the papers. It was proved, that the sheriff gave the plaintiff notice of the suit instituted by McAden, soon after it was begun. It was further proved, that the coroner seized the slaves in the hands of Gibson, in virtue of the writ of detinue, at the suit of McAden.

The court charged the jury, that if the slaves levied on by the attachment of the plaintiff, were the property of McAden, at the time of such levy, they must find for the defendants. 2. That if the slaves were surrendered by Gibson to the coroner, in obedience to the writ of detinue sued out by McAden, against Gibson, they must find for the defendant. To these charges the plaintiff excepted.

The plaintiff moved the court to charge, that the appointment of Langford, as coroner, by the judge of the county court, was not good in law. That if good, he could not execute the writ, until he had given bond. That unless bond pursuant to law had been given in the action of detinue, Gibson was not justified in surrendering the slaves to the coroner. That it was the duty of Gibson to execute a replevy bond, and retain the slaves, notwithstanding he gave notice to the plaintiff in the attachment; and, lastly, that the return by Gibson, on the attachment, that he had levied on the slaves, as the property of said company, was conclusive proof of property in the company. These charges the court refused to give, and the plaintiff excepted.

These matters are now assigned as error.

Parsons and Rice, for the plaintiff in error.

This cause was tried on pleas 2, 3, 7 and 8—a demurrer having been sustained to the second breach of the declaration.

1. The second charge given by the court directs, in the most positive terms, a verdict for the defendants, "if the jury believe the property was surrendered in obedience to the writ in detinue." This charge is certainly wrong. It puts out of view the title to the property, and amounts to a charge that the sheriff is justified in giving up property in his custody under process, when sued for it, whether the party suing is the owner or not.

The sheriff is authorized by statute to require a bond of indemnity before levying an attachment, but not after. The statutes in respect to executions do not apply. 6 Ala. 474; Dig. 210, § 50; 209, § 44; 7 Ala. 243.

In virtue of the levy, the sheriff acquired a right to the possession, which he was bound to defend, even with force, against an officer. 10 Verm. 238; 1 Pick. 395; 5 Mass. 516. Or he might have filed a bill of interpleader. 4 H. & M. 506.

The suit in detinue is no defence for not keeping the property. 7 H. & J. 60; 14 Johns. 84; 1 How. 160; 5 Mass. 280.

It was the sheriff's duty at least to have given notice and demanded security, if he did not waive his right by levying without. It is insisted that he did—that indemnity or security can only be required in cases given by statute. 6 Ala. 474.

But he should be estopped for another reason. By his levy, he affirms the property belongs to the defendant in that attachment. 1 Ala. 303; Ib. 308-9; 9 Ala. 613. This is an official act, and binding on his securities. 9 Ala. 486; 7 Ala. 834-5. This return is conclusive so long as it stands of record, or until amended by leave of the court. Price v. Cloud, 6 Ala. 248. And it cannot be contradicted. Clark v. Gary, 11 Ala. 98; King v. Buck, Ib. 219; 2 Saund. 344, n. 2; 6 Mass. 325; 7 Ib. 388; Croke James, 514; 8 Johns. 16; 6 Greenl. 296.

But the sheriff will not be permitted to amend his return on mesne process after judgment, when the effect would be to reverse it. 8 Ala. 86; 4 Ala. 153; 2 S. & P. 109; 2 H. & M. 180; 5 How. 173; Smede's Dig. 385, § 23, and cases

42

cited. To amend now, would cause the judgment to be reversed. 7 Ala. 715; 5 S. & P. 119; 13 Mass. 270.

The sheriff having gained the suit in detinue, cannot now say the property was another's, and the return will be a satisfaction of the judgment in attachment to the value of the property attached. 9 Por. 201; 4 Ala. 543.

These securities are the ones liable for the default of the sheriff. 7 Ala. 79; 4 Ala. 607; 15 Wend. 623; 9 Ala. 484; 12 Wheat. 129; 4 Dev. 412; 11 Wend. 639; 9 Ala. 173. The testimony of the witness, Shelton, as shown by the bill of exceptions, was clearly incompetent.

J. T. MORGAN, for defendant in error.

1. The declaration does not in either count aver that the liability of the sheriff occurred after the bond sued on was executed. Bagby v. Harris, 9 Ala. R. 173; 2$\frac{3}{5}$Ala. Rep. 425; 9 Ib. 487.

2. The sheriff was not estopped by his return from showing that the property levied upon by him, was not the property of the defendant in attachment. Cannada v. Southwick, 15 Pick. 556; Boynton v. Millard, 10 Ib. 166; Waterhouse v. Gibson, 4 Greenl. 234; Mason v. Watts, 7 Ala. Rep. 704-6; 2 Greenl. Ev. 482-3, § 587, 588; Leavitts v. Smith, 7 Ala. R. 175; Jordan v. Gallup, 16 Conn. 547; Commonwealth v. Abell, 6 J. J. Marsh. 476; 9 Ala. 613; 2 N. Hamp. R. 87; 4 Mass. 498; 12 Mass. R. 163.

3. But if the property actually belonged to the defendant in attachment, the sheriff or his securities may show that he delivered it up to superior liens, or superior process, before the bond sued on was executed. Bissell & Carville v. Lindsay, 9 Ala. R. 167; 2 Chit. Bl. P. 123; 2 Greenl. Ev. title Trover, 480, § 585, and notes, and p 533, § 644; Townsend & Gordon v. Everett, 4 Ala. R. 607; Governor, use, &c. v. Robbins, 7 Ala. 82-3; Hogan v. Smith, 4 Ib. 93; Bagby, use, v. Harris, 9 Ib. 179; Dumas & Co. v. Patterson, 9 Ala. 487; 8 Mass. 79; Leavitts v. Smith, 7 Ala. 175; Smith v. Locke, 4 Ala. 288.

4. There being a doubt as to the ownership of the property levied on, the sheriff had the right to surrender the property to the claimant, having given notice to the plaintiff in at-

tachment, and the plaintiff having failed to give the required indemnity. Clay's Dig. 58, § 12; 2 Greenl. Ev. 480-1, § 585. There is nothing in our statute restricting the right to indemnity to particular process. The right existed at common law. Allen on Sheriff, 152; 10 Johns. Rep. 98; 15 Ib. 147; 8 Ib. 185. Here the right exists, and the sheriff is compelled to judge of the necessity of indemnity at his peril, without a jury, and this is the only difference. Ogden and Wadlington v. Powell, 7 Ala. 243.

5. The plaintiff in attachment was notified that the suit was instituted against the sheriff for the property levied on, and failed to provide for the defence of the suit. 2 Greenl. *supra ;* Clarke v. Smith, 10 Conn. 7; 4 Gill & John. 404; Bond v. Ward, 7 Mass. 123; Ogden & Wadlington v. Powell, 7 Ala. R. 244; Governor, use, &c. v. Powell, 9 Ala. 36.

6. The proof of Shelton is competent as he derived it from witnessing the transaction in which the sale of the negroes took place, and he proves the declarations of a party in possession of the property. Oden v. Stubblefield, 4 Ala. R. 40; Bliss v. Winston, 1 Ib. 344, Gary v. Terrill, 9 Ib. 206; Anderson v. Snow & Co. 9 Ib. 247.

7. The authority of the coroner to act cannot be collaterally called in question. The second appointment of the county judge made him coroner *de facto,* and it was not material whether he was coroner *de jure.* Moore v. Culley, 1 N. Hamp. 223; Fowler v. Bebee, 9 Mass. 231; Commonwealth v. Fowler, 10 Mass. 290; Buckman v. Ruggles, 15 Ib. 180; Dotey v. Graham, 5 Pick. 487; 16 Peters, 85; Town of Plymouth v. Painter, 17 Conn. 585.

COLLIER, C. J.—We have repeatedly held, that a sheriff or other officer who levies a *fieri facias* or other process on personal property may be sued in detinue by one who claims a legal right to it; and the action may be prosecuted in the ordinary mode of proceeding, or according to the provisions of the statute upon the subject. Bissell & Carville v. Lindsay et al. 9 Ala. Rep. 162; Easley v. Dye and Dye by their next friend, at the last term. Here the suit by McAden against the defendant, Gibson, was instituted as the statute provides, and the slaves taken into the possession of the cor-

oner, under the mandate of the writ; and the first question
that arises is, whether the divestiture of Gibson's possession
under the circumstances of the case, furnishes an answer to
the present action.

A sheriff who siezes property is bound to retain it to an-
swer the exigency of the precept under which he acted, or
show a legal excuse for having parted with it.   But it cer-
tainly was not indispensable to his protection in the present
case, that he should have replevied it by executing a bond
with surety, pursuant to the act of the legislature.   It was
quite enough that he gave notice to Alford, the party at
whose instance he levied on the slaves, and called upon him
for indemnity, and if Alford declined a compliance with the
requisitions, he might well refuse to replevy.   Such a bond
as the defendant was required to give, imposed a personal
responsibility upon him, at least equal to the value of the
slaves and their hire, and being an agent of the law, and as
such, a mere custodian, he was not bound to incur it.

Whether McAden had executed the bond upon which the
order for the seizure of the slaves could only be regularly
made, is not in the present case a material inquiry.   If the
writ under which the coroner acted, was regular upon its
face, and directed him to take the slaves, the defendant was
under no obligation to look behind it, to ascertain whether
the pre-requisite steps had been complied with.   The notice
to Alford would have enabled him to scrutinize the proceed-
ings, and if he was not sufficiently vigilant, the defendant
cannot be visited with the consequences of his neglect.

Nor was it incumbent upon the defendant to inquire, whe-
ther the special coroner who executed the process against
him, had taken the oaths of office, and executed an official
bond, even conceding that these were essential to confer an
authority *de jure.*   By the seventh section of the act of 1833,
"prescribing the duties of coroners," it is enacted, "that the
county courts shall have power to appoint a coroner, in cases
where there shall be no coroner in said county, when it may
become necessary for any process to be served on the sheriff."
Clay's Dig. 159, § 6.   As the defendant was sheriff, this en-
actment was an ample warrant to the judge of the county
court to appoint a coroner for the purpose of executing the

writ at the suit of McAden against him. It may be well questioned whether such special appointee should be required to give bond for the performance of the duty devolved upon him; but if the law contemplates it, the judge, and not the defendant, should see that he executes it. The mere appointment makes him an officer *de facto, pro hac vice,* and this is quite sufficient as it respects third persons.

In a suggestion against a sheriff, under the statute, that with due diligence he could have made the money on a *fieri facias,* it has been held to " be entirely competent for the sheriff to show, as well before as after levy, that the money could not be made. The levy will not estop him from denying that the property seized was the defendant's. In taking it he merely affirms that he believes it is subject to the execution; and when charged with the want of diligence, it is incumbent on him to show that he was mistaken." Leavitt v. Smith et al. 7 Ala. Rep. 175. "*Prima facie,* he would be charged on account of his levy; but he could discharge himself as in any other case of tortious levy, by showing that the defendant in execution had no property in the goods, and that the party from whom they were taken, had been reinvested with the possession. Bristol v. Wilsmore, 1 B. & C. 514, is conclusive to show that the owner of goods may retake them from the sheriff, even after a levy at the suit of another. This being the law, it would operate most oppressively, if such an officer could not defend himself by proof of the same facts which would defeat his action against the true owner, subsequently taking them from the sheriff; and which would render the sheriff liable, if sued in the first instance." Mason et al. v. Watts, 7 Ala. Rep. 703. These citations are most significant and direct to show, that it was allowable for the defendants to resist a recovery, by proof that the slaves were the property of McAden. We have seen that the official character, and the manner in which he acquired the possession of the slaves, did not exempt him from liability to have them taken from him by process in the action of detinue; and that he was not bound to replevy; especially if the party at whose suit he had seized them was passive after notice of the levy. Proof of these latter facts, irrespective of McAden's title, would furnish an unquestionable defence in

the present action.    Wentworth v. The People, 4 Scam. R. 550 ; Merritt v. Miller, 13 Verm. Rep. 416 ; Lents v. Chambers; 5 Ired. Rep. 587.

The idea that a sheriff is estopped by his levy from denying under all circumstances, that the property levied on was not liable to satisfy the plaintiff's demand, is founded on a false hypothesis. None of our decisions, or any other that has been brought to our notice, lay down the law thus broadly. The presumption is, that an officer charged with the execution of process has done his duty, and when he has seized property under its authority, that it was liable to answer the exigency; and upon this assumption all courts proceed. But the levy is not regarded as *conclusive, record evidence* of the defendant's title—its effect is to raise a strong presumption against the officer, which he must repel by proof. Arnold v. Pond, 4 Shep. Rep. 249. See also 12 Mass. Rep. 196; 16 Id. 8; 11 Pick. Rep. 524; 19 Id. 522.

The third plea of the defendants, alledges that the sheriff Gibson ceased to retain the possession of the slaves levied on, almost two years previous to the execution of the bond by them; in other words, that a conversion (if any) occurred before the bond had an existence; and they are not therefore liable for such conversion as a breach of their undertaking. In Dumas & Co. v. Patterson et al. 9 Ala. Rep. 484, it was held, that where a sheriff *appropriates money* collected on an execution, and then renews his official bond, the sureties in the renewed bond are not liable for his default; but the plaintiff must proceed against the sureties in the bond, under which he was acting when the conversion occurred. This case is directly in point, and shows that the demurrer to the plea was properly overruled.

It is difficult to perceive of any objection to the answer of the witness, H. F. Shelton, to the second direct interrogatory contained in his deposition. The facts which he narrates are altogether pertinent, and stated not by way of information or belief, but professedly upon his own knowledge of the transactions between W. H. Shelton and McAden. These transactions were the advance of money by the latter to the former, and a sale of the slaves attached in payment of this indebtedness. It would be too much to assume that the wit-

ness was testifying from hearsay, because in answer to one of the cross·interrogatories, he says, "I derived the most of my information in regard to the connection of W. H. Shelton and McAden by said Shelton himself; besides, I copied bills of sale, agreements, &c. between them." Now, although the witness says he derived the *most* of his information from W. H. S., we cannot assume that the facts positively stated in answer to the second interrogatory were thus acquired; especially as they are such as may very well be within his personal knowledge.

What we have said in respect to the notice to Alford of the seizure of the slave while in Gibson's possession, under the process in detinue at the suit of McAden, was suggested by the pleadings, in which such notice is distinctly alledged; but we did not intend to be understood as asserting, that a notice of the seizure was indispensable to the defence. As a precautionary step it was altogether proper, that the sheriff might call to his aid the plaintiff in attachment in making defence against the action of detinue; but the omission to give the notice would not make him chargable with the value of the property. It is a good defence for a sheriff, when sued by the plaintiff in the proceeding, for not making goods available to satisfy process under which they were seized, to show that they were taken from his possession under a writ regularly issued; and the further duty we have seen, does not devolve upon him to show that after they were taken from him, they were legally disposed of. If there was evidence implicating the integrity and good faith of the sheriff, then it might be necessary to his vindication to prove a notice, or something equivalent, to relieve himself from the imputation of *mala fides*. But it is not pretended that the defendant Gibson has not acted honestly, and we can see no ground on which it can be maintained, that the second charge is too restricted, and excluded from the jury the consideration of important facts.

It is not necessary to consider whether the circuit court laid down the true rule by which the damages should be measured, in the event the plaintiff was entitled to a verdict. However this may be, the jury have determined that he is not entitled to recover any thing, and if the rulings of the

court were in other respects proper, he cannot complain that he has been prejudiced. The charge could not have misled the inquiries of the jury upon the primary question, and as to the subsequent one, viz : the extent of the damages, it was not considered by them.

It is insisted for the plaintiff in error, that to let in evidence of the fact that the slaves attached were not the property of the defendant in the attachments, or that they were taken from his possession by the process in the action of detinue, the returns should have stated the fact ; especially as it appears that he had parted with the possession before the attachments were returnable. This argument is supposed to be maintainable upon the ground that the returns are *quasi* records, and cannot be contradicted by evidence *aliunde;* and to authorize its admission, the sheriff should have amended his returns upon leave of the court for that purpose.

The returns of the sheriff are dated of the day when the attachments were placed in his hands, and before the action of detinue was instituted by McAden ; so that he could not at that time have affirmed that his possession of the slaves had been divested. True, he might have stated the fact as an addition to his return, as he retained the attachments in his hands several months after the seizure by the coroner; and it was altogether proper to do so, for the purpose of informing the plaintiff of the fact. But a failure to perform this duty, cannot conclude him from showing what disposition he made of the slaves. Such evidence does not contradict the fact of his levies; but is matter extrinsic and *dehors* the record, and is not inhibited by the rule for which the counsel for the plaintiff in error contends.

In Evans v. Davis, 3 B. Monr. Rep. 344, the general rule was admitted, that a sheriff is estopped from controverting the facts embraced in his return, and which were within the sphere and connected with the discharge of his duty; but it was held, that a sheriff when sued as a trespasser for the seizure of property under an execution, may prove facts *dehors* his return, and not inconsistent therewith. See The Governor, use, &c. v. Bancroft et al. at this term, in which the

effect of such returns is largely considered, with a reference to the authorities.

The first breach alledged in the declaration is sufficiently comprehensive to embrace every fact stated in the record, so far as these can avail to aid the plaintiff's recovery; and the bill of exceptions shows, that the entire acts and omissions of the sheriff in respect to the attachments, were fully litigated before the jury. It is obvious, then, the plaintiff has not been prejudiced by sustaining the demurrer to the second breach; and according to repeated decisions of this court, it furnishes no ground for the reversal of the judgment, whether erroneous or not.

The other questions arising upon this confused, and unnecessarily voluminous record, which are not specially noticed, are embraced and decided by the points of law we have considered; and the result is, that the judgment of the circuit court is affirmed.

CHILTON, J., not sitting.