## TOWNSEND AND GORDON v. EVERETT, use, &c.

1. The surety of a County Treasurer, on his official bond, is bound for the monies of the county in the hands of the Treasurer, at the time of the execution of the bond, although a previous bond then existed with different sureties. But if the money had been wasted by the Treasurer, or appropriated to his own use, before the execution of the last bond, the sureties on the first bond would alone be responsible.

2. The surety of a County Treasurer, to his official bond, is bound by those acts of the Treasurer which by law, as Treasurer, he is required to perform—the annual settlements, therefore, of the County Treasurer, and the statement to his successor in office of the amount of public money in his hands, being acts which by law, as treasurer, he was required to perform, are evidence against his surety in an action against him on the official bond of the Treasurer.

Error to the Circuit Court of Mobile.

This was an action brought by the defendant for the use of the Treasurer of Mobile county, against the plaintiffs in error, as principal and surety in a bond made by Townsend as County Treasurer of Mobile county, dated 30th November, 1839, in the penal sum of thirty thousand dollars, with the usual statutory condition.

The declaration sets out the condition of the bond and assigns as a breach the refusal to pay by Townsend to Stickney, his successor, the money in his hands on demand made for that purpose.

The entry of the pleas is, " Defendants craved oyer and payment, and performance, pleaded in short by consent."

The jury found the issues for the plaintiff, debt nintety-four hundred and forty dollars and ninety cents, damages fourteen hundred and seventy-eight dollars and fifty-four cents. It is therefore considered, &c. that the plaintiff recover from the defendants the sum of ten thousand seven hundred and nineteen dollars forty-four cents, &c.

From a bill of exceptions taken pending the trial it appears that the declaration was filed and the pleas put in at a former term of the Court, as they appear written in the record. At the time of the trial the defendants proposed to add the word

*separately* at the end of the plea, and which they had written in pencil a day or two before the case was called for trial, to which the plaintiff objected. The Court sustained the objection, and the word *separately* was erased, to which the defendants excepted.

The plaintiff read in evidence the bond of Townsend, dated the 30th November, 1839, and proved that Townsend was duly elected Treasurer of the County of Mobile, on the — day of September, 1839, and then offered in evidence an official report of Townsend to the proper Court, and that the same was accepted and recorded: this report bears date 9th December, 1839. To the introduction of this report, the defendant, Gordon, objected, because it embraced monies received by Townsend before the date of the bond, and because it was not otherwise evidence against the security. The objection was overruled, and the defendants excepted.

The plaintiff proved by William Magee, that he was Tax Collector in February, 1840 ; that on the 8th February, 1840, he paid to Townsend, as Treasurer, $3,914 30, and also proved a demand of Townsend, by the plaintiff, as successor, o f the money, books and papers held by him as Treasurer ; that Townsend resigned in May, 1840, and that Henry Stickney was his successor, and closed his case.

The defendant then proved by Magee, that he paid to Townsend the amounts mentioned in a paper, (exhibit C.) at the dates and in the sums therein mentioned, and that the same was all the money paid by him as Tax Collector, from 3d February, 1839, until May, 1840, the time of his resignation. The defendant Gordon, then, for the purpose of impeaching the report and explaining the same, offered in evidence County orders in the possession of Townsend, the dates, amounts, &c. of which are set forth in exhibit D., but there was no proof when the same were paid. Also, that an order issued to the Treasurer in favor of J. K. Collins for $5000. On which $2,448 48, was paid on the 30th November, 1839. Also, a certificate in favor of Joshua Kennedy for $3,393—on which $3000 was paid 5th December, 1839.

The defendant, Gordon, also proved that Townsend had been County Treasurer of Mobile County, from the 3d of February, 1836, until the 3d of February, 1839, and produced his bond

as such Treasurer, dated 25th July, 1836, with A. W. Gordon and T. Sandford, as his sureties, and proved that a suit is now pending in the Circuit Court for a breach of the bond, commenced 27th April, 1842, and also proved that Townsend received large sums of money during his first term, and closed.

The plaintiff, to rebut defendant's proof, then proved that Townsend resigned in May, 1840, that after his resignation he made an official report to his successor, dated 9th May, 1840, acknowledging a balance in the treasury of $9,240 90, to the credit of the county.   To the introduction of which the defendant, Gordon, objected, but the Court overruled his objections, and he excepted thereto.

The defendant's counsel then asked the Court to charge the jury, that if they believed that Townsend was County Treasurer from February, 1836, to February, 1839, with one set of securities, and that he did not settle his accounts with the County Court before his second appointment, and was appointed a second time in September, 1839, with different securities, and made default, the securities of the last bond are not liable for the default of the principal under the first bond, and if a general account of both terms is brought up, and a balance struck thereon, that the security of the latter is not liable at all for the sums so admitted—which charge the Court refused, and charged that for any money Townsend had collected and received as County Treasurer, and had in his hands, at the time of the execution of the bond declared on, and for any received after the execution of the same, and which he had not paid over, he and his sureties are liable in this action; and if the defendants insist that the sureties of the first bond are liable, the jury must be first satisfied that there was a default under that bond.   To the refusal to charge, and to the charge as given, the defendents excepted.

The assignment of error is the matter arising out of the bill of exceptions.

CAMPBELL, for plaintiff in error.

DUNN, contra, cited 9th Porter 186; 1 Peters, 168; 9 Cranch 237; 5 Peters, 373; 15 id. 207; 2 Bailey, 380; 2 Wash. C. C. 473; 1 Monroe, 171.

ORMOND, J.—The refusal of the Court to permit the pleadings to be amended, being a pure question of discretion addressed to the Court below cannot be reviewed in this Court.

Two questions are presented on the bill of exceptions:

First—Is the surety of the Treasurer bound upon his bond for monies which came to the hand of his principal before the execution of the bond ?

Second—Are the statements made by the Treasurer of the County, in his reports of the state of the County Treasury, evidence against his surety ?

1. The condition of the bond is, that Townsend, the Treasurer, " shall, from time to time, and at all times, render a just and true account to the Commissioners Court of Roads and Revenue of Mobile county, when thereto requested, of all the monies, securites, stock and other property of said county, which shall come to his hands, or be committed to his charge, and deliver the monies, securities, stocks and other property of said county in his hands, together with all documents, &c. to his successor," &c.

The statute makes it the duty of the County Treasurer to receive and keep the monies of the county, and to disburse the same according to law, [Aik. Dig. 424, §7,] and it cannot admit of question, that his official bond covers all the money which is in his hands, belonging to the county at the time of its execution, as much so to all intents and purposes as if he had received it afterwards. [Farrar and Brown v. The United States, 5 Peters, 373.]

In this case, it appears that the Treasurer had received money belonging to the county anterior to the execution of this bond, and whilst a different bond with a different surety existed. As there is nothing in the act requiring the bond to be taken, which would authorize the presumption that it was intended to cover *past* derelictions of duty, it is very clear that if this money had been wasted or appropriated to the use of the Treasurer, before the bond here sued on was executed, the surety in the former bond would alone be responsible, and to that effect the Court charged the jury.

There is some obscurity in the charge moved for by the defendants, but it appears to assume that, as the Treasurer did not settle his accounts until after the execution of the last bond,

the surety in the latter is not responsible for money received by the Treasurer, while acting under the first bond. But it is not the *receipt* of money by the Treasurer which renders the surety liable; it is his failure to disburse it according to law. It is true that the Treasurer is required to settle his accounts annually, but the surety can claim no exemption from this failure of the Treasurer to perform his duty. ˙ The fact that he did not settle his accounts until after the second bond was executed, which is assumed in the charge moved for, if true, would not be conclusive to show that there was a misapplication of the money of the county previous to that time. The law requiring annual settlements to be made by the Treasurer, [Aik. Dig. 426, §21,] gives a specific penalty for such failure, but does not make it evidence of a defalcation. Nor does it follow, that because the treasurer may have faithfully disbursed all the monies received by him, since˙ the date of the last bond, that he had before that time wasted, or misapplied the monies previously received by him ; *non constat* but that the monies previously received were in the County Treasury at the time the last bond was executed. A strong presumption that such was the fact arises from his report made a few days afterwards, in which he admits a larger sum to be in the Treasury of the county, than the defalcation found by the jury at the trial.

2. This brings us to the next inquiry, whether the reports of the Treasurer are binding on his surety ? We do not consider it necessary, in this case, to go into the inquiry how far the surety is bound by the *declarations* of the principal, made in reference to his conduct as Treasurer, whilst in office ; as he certainly is bound by those *acts* which, as Treasurer of the county, his principal was bound to perform, and for the performance of which he was surety.

. The statute requires the Treasurer to account with the Commissioners Court annually, and upon his *resignation* or *removal* from office, to *state the account*, and deliver the money and other effects of the County to his successor, and these acts when done are as obligatory on the surety as on the principal. The precise object of this accounting is to show the state of the Treasury, or in other words, the amount of the public money in the hands of the Treasurer and the security, afforded by

ALABAMA.

the bond, would be perfectly illusory if the surety was not bound by the act, when done, to the same extent as the principal. We are unable to perceive any difference, as it respects this question, between the surety of a Sheriff and the surety in this case, and it cannot be questioned that the return of a Sheriff upon an execution, that he had made the money thereon, would be evidence of that fact against his sureties. So it has been held, that the entries of a Teller of a Bank, in a book in which he daily stated his account as Teller, was evidence against his surety. [State Bank v. Johnston, 1 Rep. Con. Court, 404.] To the same effect is Pendleton v. Bank of Kentucky, 1 Monroe, 171.

The only doubt which could exist in this case, is the propriety of the admission of the account stated by Townsend after his resignation, showing the amount of money in his hands as Treasurer of the County, as evidence against his surety.

It may be conceded that the acts or declarations of a principal, which will be evidence against the surety, must be made or done in the performance of the duty for which the surety is responsible; but the concession will not avail the surety in this case, as that is literally the fact here, even as it regards the report made by the Treasurer to his successor in office, of the amount of public money in his hands. The rendition of this account to his successor, is a part of his duty as Treasurer, and is not in the nature of an admission, which he might make or withhold at pleasure; but is as obligatory on him, and as much a part of his official duty, as the annual account which he is required to render to the Commissioners Court: and has, indeed, precisely the same object in view—the ascertainment of the state of the Treasury.

We are not, however, to be understood as deciding that the account thus rendered is *conclusive* on the County; it is certainly, however, *prima facie* evidence against the Treasurer. It is an *act* which he is required as Treasurer to perform, and which, when performed, is evidence both against him and his surety.

The result of this examination is, that the judgment of the Court below must be affirmed.