[McPhillips *et al.* v. McGrath *et al.*]

# McPhillips *et al. v.* McGrath *et al.*

*Action against Sureties on Official Bond of Register in Chancery.*

1. *Register in chancery; duty and liability as to money paid into court in the course of a pending suit.*—Where in the course of a pending suit in chancery money is paid into court, the duty and liability of the register at once attach, and it is his duty to receive and safely keep such money until the court orders its disposition; and for the conversion or misappropriation of such money by the register, he and the sureties on his official bond are liable.

2. *Same; liability under decretal order.*—Where in the course of a pending suit in chancery, money is paid into court as belonging to certain parties to the suit, and the chancellor, by decretal order, directs the register to invest such money in the purchase of real estate for the benefit of the parties to whom it belongs, taking title thereto in his own name as trustee, until there is an investment of the money in the purchase of real estate in obedience to the decretal order, the register is not relieved from his duty and liability as register in respect to such money; since until such investment, there is in existence no trust estate, to which the duty and liability as trustee could attach.

3. *Same; same; partial investment.*—In such case, where the register invests a part of the money in the purchase of real estate, he is relieved *pro tanto* from official liability as register.

4. *Same; same; investment of money other than as directed constitutes conversion.*—Where in the course of a pending suit in chancery, money is paid into court as belonging to certain parties to the suit, and the chancellor, by decretal order, directs the register to invest such money in the purchase of real estate for the benefit of the parties to whom it belongs, by such order the register is confined in his authority and duty to the investment of the money in the purchase of real estate, and a loan of the money, or any investment of it other than as directed, constitutes a conversion thereof by the register, rendering him and his sureties on his official bond absolutely liable.

5. *Official bonds; liability of sureties as to previous defaults.*—In the absence of statutes providing otherwise, or of express stipulations in the bonds, sureties on official bonds are not liable for the defaults or delinquencies of their principal occurring before the execution of the bonds; and the fact that the principal is the incumbent of the same office for successive terms does not change the rule, since, in such case, the sureties on the last bond must be treated and consid-

[McPhillips *et al.* v. McGrath *et al* ]

ered, and the extent of their liability determined, as far as practicable, as if their principal had not been the incumbent for the preceeding term.

6. *Same; presumption against sureties on second bond.*—No presumption arises against the sureties on a second official bond that money, which came into the principal's official possession while a former bond was of force, was in his hands when the second bond was executed; but each case must be governed by its own particular facts and circumstances.

.7. *Register in chancery; unauthorized investment of funds; liability of sureties on second official bond.*—Where a register in chancery misappropropriates or converts money in his hands by loaning or investing ·it otherwise than as directed by a decretal order of the chancellor, and such misappropriation or conversion is made before the execution of the second official bond to cover a term in which he is his own successor in office, the sureties on the later bond are not liable ·therefor; but if after making such unauthorized investment, the register, subsequently and after the execution of the later bond, collects said money, the sureties on such bond are liable, if he thereafter fails to properly account for it.

8. · *Same; presumption against sureties on second official bond.*—Where a register in chancery receives funds into his custody during a term preceding that covered by a particular official bond, and converts them, there is no legal presumption that the conversion was prior to the execution of the later bond.

9. *Same; interest on unauthorized investment of. money; liability of sureties on second official bond therefor.*—Where a register in chancery misappropriates or converts money in his hands by loaning or investing it otherwise than is directed by a decretal order of the chancellor, and such misappropropriation or conversion is made before the execution of a second official bond to cover a term in which he is his own successor in the office, the sureties on the later bond are not liable for interest on the money so misappropriated from the time of its unauthorized loan or investment, even though such loan or investment continued after the execution of the said second bond.

· 10. *Same; same.*—A register in chancery, having received into his official custody a fund which he misappropriated by an unauthorized · investment, is chargeable with interest from the time of such misappropriation, and not from his failure to turn over such fund to his successor.

11. · *Public officer; liability for interest on money misappropriated; demand unnecessary.*—As a general rule, a demand for payment is necessary to fix upon a public officer a liability for interest on money . in his possession; but if there has been a misappropriation or conversion of money in his official custody, a demand is not necessary to fix liability for interest thereon; it being presumed, under such circumstances, that a demand, if made, would be unavailing. ·

· 12. *Official bonds; liability of sureties for interest on money misap-*

[McPhillips *et al.* v. McGrath *et al.*]

*propriated by their principal.*—The sureties on an official bond are liable for interest on money misappropriated or converted by their principal, only when such money was in his possession at the time of the execution of the bond by them and was misappropriated or converted during the term covered by their said bond.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

This was a suit brought by the appellees, John McGraw, his brothers and two sisters, all minors, and children of John McGraw, deceased, by their next friend, against the appellants, James McPhillips and John L. Rapier, as sureties on the official bond of Joseph Hodgson, register in chancery of Mobile county, Alabama, to recover a sum of money, which was paid into the custody of said Hodgson, as such register, belonging to said minors, and which said register had failed to account for or pay over.

The complaint contained two counts; the first counting upon the breach of a bond executed on December 1, 1893; and the second counting upon the breach of a bond executed on December 11, 1894. These counts alleged respectively: "That Hodgson was register of the chancery court of the Thirteenth District of the Southwestern Chancery Division of Alabama on the 16th of April, 1888, and continuously therefrom to the time of the appointment of his successor on the 29th of May, 1896; that defendants had made the two official bonds sued on, one on December 1st, 1893, for $10,000, and the other on December 11th, 1894, for $5,000, each conditioned for Hodgson's faithful discharge of the duties of such office of register during the time he continued therein or discharged any of the duties thereof; that the condition of each of the bonds had been broken in this, that on the 16th of April, 1888, and continuously therefrom to the appointment of his successor, Hodgson had in his custody, as such register, $776.55 belonging to plaintiffs, and that he had refused to pay over the same to his successor upon demand, or to plaintiffs or to any one for them."

On 25th January, 1897, defendants filed a plea alleging that their principal, Hodgson, had unlawfully converted to his own use the money sued for before the execution and delivery of either of the bonds sued on, and that no part thereof was in his possession as such

register at the time of their execution of the bonds, or at any time thereafter. Subsequently, by leave of the court, defendants filed five additional pleas to each count of the complaint, substantially as follows: 1. That there had been no breach of the condition of either of the bonds sued on, as alleged in the complaint. 2. That Hodgson did not have in his possession or custody as such register any money belonging to plaintiffs at the time of the execution of each of the bonds sued on, or at any time thereafter. 3. That Hodgson's successor as register had not made demand upon him to pay over the money sued for, nor had plaintiffs or any one of them made such demand upon him, and that he had not refused to pay the same to his successor, or to any one entitled to receive it, before suit brought. 4. "That prior to defendants' execution of the official bond in said count set forth, and while he was register of the chancery court in said county mentioned, said Hodgson did have in his possession a sum of money belonging to plaintiffs, and which was the same fund alleged in the complaint to have been in his custody as register; he held the same upon the trust and in the capacity hereinafter stated, and not otherwise: a bill of complaint had been filed in said court in the year 1886 to subject to the payment of a debt certain lands in which plaintiffs were interested, and they and their mother were made parties defendant to said suit; they had no general guardian and were represented therein by a guardian *ad litem*; a sum of money was paid into court in said cause on the 31st of January, 1887, and then went into the custody of said Hodgson as such register; said cause was then ripe for a final decree, and, on the 8th of February, 1887, at a regular term of said court, the court rendered such decree, apportioning the money so paid into court among the parties entitled thereto, adjudging about $700 thereof to plaintiffs, and ordering the register to retain the amount so allotted to them until the further order of the court; on the 9th of February, 1887, in such regular term, said court rendered a further decree in said cause, which recited that it appeared to the court that the appointment of a guardian for plaintiffs would consume a large part of said sum in the hands of the register, and that it seemed best that said sum should be appropriated to the benefit of said minors directly by the court, and

ordered that the register invest so much of said fund as might be necessary for the purchase of a home for plaintiffs and their mother, provided he could find such a place as would, in his opinion, be acceptable to their said mother for a home, and would, in his opinion, be suitable for them to occupy as a residence ; said decree further directed that, upon making such purchase the register should put said mother and children, the plaintiffs, into the possession of the same, and that he should take the title to himself as trustee for plaintiffs, to hold the same as such trustee for the use and benefit of said children under the direction of the court, with power to sell the same for reinvestment or other purposes, under the express direction and order of the court and not otherwise; said decree further ordered that, if the register should be unable to make investment of such fund in such manner as aforesaid, he should, in vacation, report the fact to the chancellor for further orders in reference to said fund ; at the next regular term of said court, in June, 1887, said register reported to the court in writing in said cause that the mother of said children refused to co-operate with him in selecting a piece of real property for the investment of said sum, and, as trustee, he reported that no investment could be made under said decree last above set forth, and asked that said decree should be so modified as to permit the investment to be made without the consent of the mother, or that such other investment should be ordered, with or without the consent of the mother, as the court might deem best for the interest of plaintiffs ; and thereupon, at said regular term, on the 4th day of June, 1887, said court rendered a decree directing that the register should execute said former decree for investment without the concurrence or consent of the plaintiffs' mother, if she should refuse to co-operate and advise with the register as therein contemplated ; said last mentioned decree directed that in making such purchase the register should, if practicable, purchase property of some rental value, as the mother of plaintiffs might refuse to occupy it with them as a home ; on the 16th of April, 1888, at a regular term of said court, said register, as trustee of said fund, reported to it in writing in said cause that the sum which he had been ordered to invest had been originally $710.30 ; that he had been unable to purchase any

real estate upon reasonable terms; that, in the mean-
time, he had loaned out the funds, upon ample security
and at his own risk, at 8 per cent., had realized $66.25
of interest thereon, and then had in his hands in money
the whole amount of the fund, $776.55, for investment;
that he had contracted for the purchase of two lots and
for the building thereon of two cottages for rent; that
the titles to the land had not then been perfected, but
that it was expected that the titles and improvements
would be made within the next ninety days; said report
was confirmed by an order of said court made at said
term, on the 18th day of April, 1888; on the 6th of De-
cember, 1888, at a regular term of said court, said reg-
ister, as such trustee, reported to said court in writing
in said cause that, at the date of his last report as such
trustee, he had in hand $776.55; that he had purchased
two desirable lots upon which he had contracted to have
built two small houses, which contract had not then been
completed; that he had paid for the lots $180; that he
had paid out of said fund certain costs and expenses,
itemized in his said report and amounting to $8.50, leav-
ing in his hands, on the 5th of May, 1888, a balance of
$588.05.; that he had loaned out said balance for six
months, realizing $23.52 of interest thereon, and that, at
the time of making said report he had in his hands a
balance of $611.57 of said fund; he attached to his said
report, as a part thereof, two deeds duly executed and
recorded, and which conveyed to him, as trustee for
plaintiffs, two lots of land situated in the city of Mobile,
in the State of Alabama.; said report was in all respects
confirmed by an order of said court made at said regular
term on the 7th of December, 1888, and defendants say
that from and after said term last mentioned said cause
was left off the docket of said court; that no further re-
ports have been made therein, and no further orders or
decrees, or other proceedings, have been rendered or had
therein. And defendants say that if said Hodgson had
in his custody or possession any part of said fund at the
time they executed his official bond in said count men-
tioned, or at any time thereafter while he held said office
of register, he held the same as trustee under the several
orders, decrees and proceedings hereinbefore set forth,
and that his duties in respect thereof were not within
the scope of his duties as such register in chancery."

5. "And for further plea in this behalf, defendants refer to the statements of facts alleged in their plea numbered 4, last foregoing, and make such statement a part of this plea as if particularly set forth therein; and they say that there has been no settlement of the trust vested in said Hodgson by said orders and decrees of said chancery court, and no ascertainment of the balance, if any, due from him on account of his administration of such trust; and that this court has no jurisdiction to entertain such settlement and to ascertain such balance in this suit."

The plaintiffs filed a replication to the third additional plea, to which the defendants demurred, and the demurrer was overruled. To the 4th and 5th pleas the plaintiffs filed the following demurrer: "Come the plaintiffs and demur separately to the 4th and 5th pleas as pleaded to the entire cause of action, and as grounds of demurrer to each plea, say: 1st. Said plea does not allege that Joseph Hodgson ever invested the sum that came into his hands in property and took the title thereto in his name as trustee. 2d. Said pleas show that Joseph Hodgson received the money sued for as register, and do not show that he ever paid it out as directed by the orders of the court. The plaintiffs further demur to the fifth plea. 3d. Because said plea shows that the trust alleged has been terminated, and that no duty rests upon said Joseph Hodgson under said trust other than to pay over said sum due to the plaintiffs. 4th. Because said plea shows that said Joseph Hodgson received the money sued for, and has done nothing with the larger portion thereof in the execution of the alleged trust." The court sustained each of these demurrers, and to each of these rulings the defendants excepted.

Plaintiffs introduced in evidence certain portions of the record and proceedings had in the chancery court in which the money sued for passed into the hands of Hodgson. They are as follows: The original bill of complaint, filed to foreclose a mortgage on lands which had belonged to the deceased father of plaintiffs, and in which they claimed an interest. The answer of Ellen T. Corbett and the sisters of the Visitation, defendants to said bill, admitting that they had purchased the lands in question, and declaring a readiness to pay into the

court the balance due from .them for the same upon a good title being made to them therefor, and particularly upon the same being freed from the claim of plaintiffs. The answer and cross-bill of plaintiffs asking that the sale of Corbett and the sisters of the Visitation be ratified, that they be required to pay into court the balance admitted to be due from them, and that the money so paid, or a part thereof, be adjudged to plaintiffs. A decree *pro confesso* against another defendant and the formal answer of still another, which put the cause at issue. Decrees and orders of the court and reports of Hodgson in said cause, all of which are set forth *in extenso* in the transcript and substantially in the fourth additional plea as above set out.

Upon cross-examination of .Hodgson's successor, he testified that said original cause had been dropped from the docket of the court from and after the December term, 1888, thereof, and that the order of confirmation of December 7th, 1888, set forth in the fourth additional plea foregoing, is the last order, decree or other proceeding had in said cause.

Plaintiffs introduced a witness who testified that, on 4th day of. June. 1895, an attorney for plaintiffs, and their mother called upon Hodgson and requested him for his clients to buy, as a home for them, a house to be sold at public action that day, and to pay for the same out of the moneys in his hands, belonging to plaintiffs, and that Hodgson declined to do so, saying that he had the money invested and could not get it in time to make the purchase at such sale. Plaintiffs also proved that Hodgson's successor, as such register, was appointed June 5th, 1896, and sought the former to demand of him payment of the amount in his hands for plaintiffs, but could not find him and was informed that he was in Chicago. On the 15th of June, 1896, he mailed to Hodgson at Chicago a demand for such payment, and also demanded the same from defendants as the sureties on his official bonds; that Hodgson did not reply to his letter, and defendants did not make any payment upon such demand; and that a similar demand was made upon defendants by attorneys for plaintiffs in October, 1896, and that they did not pay.

Defendants offered no evidence, and the foregoing was substantially all the evidence in the case. In the course

of the trial, attorneys for plaintiffs formally admitted that that they were not entitled to recover more than $611.57 of principal, and claimed interest thereon. Attorney for defendants admitted at the same time, that, if plaintiffs were entitled to recover at all, $611.57 should be the principal of the sum so recovered.

Thereupon the court charged the jury orally, among other things, that if they found for the plaintiffs, the principal sum of the damages which they should thereupon assess for the plaintiffs should be $611.57, and in that case it was for them to say upon the evidence from what time they would give to the plaintiffs interest upon such principal; that if they should believe from the evidence that said Hodgson had loaned or invested otherwise than in a building such principal sum prior to the time that defendants made for him the first of the bonds sued on, and held the same so invested after such bond was made, then the jury should give to the plaintiffs interest upon such principal from the time that, from the evidence, they should find such loan or investment was so made, and up to the day of their verdict. When such charge was given, the defendants then and there excepted to such portion thereof, as is above set out.

The defendants requested the court to give to the jury, among others, the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The defendants ask the court to charge the jury that, if they believe the evidence, they must find for the defendants." (2.) "The defendants ask the court to charge the jury, that the evidence adduced in this cause is not sufficient to raise the presumption that Hodgson had in his custody as register the fund sued for in this cause when defendants became his sureties on the official bond described in the complaint as first made, and that they must, therefore, find for the defendants." (4). "The defendants ask the court to charge the jury, that plaintiffs are not entitled to recover interest upon the principal, under the evidence in this cause, earlier than from the date that his successor was appointed." (5.) "The defendants ask the court to charge the jury, that upon the evidence, they can not allow the plaintiffs interest upon the principal sum from a date earlier than the 4th of June, 1895." (6.) "The defendants ask the court to charge the jury, that the

[McPhillips *et al.* v. McGrath *et al.*]

defendants are not liable, under the evidence in this case, for interest on the principal sum, between the 6th day of December, 1888, and the beginning of the official term for which defendants executed the bond sued on, which term commenced on the 3d day of October, 1892." (7.) "The defendants ask the court to charge the jury that, upon the evidence, they can not allow the plaintiffs interest upon the principal from a date earlier than the 29th day of November, 1893, when the first of the bonds sued upon was executed." (8.) "The defendants ask the court to charge the jury, that if they find from the evidence that Hodgson loaned out the money sued for, or invested it otherwise than in building houses, as required by the order of the chancellor, after the 6th day of December, 1888, and before the commencement of his next official term, and that he did not again collect the money, then defendants are not liable."

The jury found a verdict for the plaintiffs and assessed their damages at $1,025.40; being the principal sum of $611.57 and interest thereon from the 6th of December, 1888, to the date of the verdict, and judgment was accordingly rendered for such sum. From this judgment the present appeal is taken by the defendants, who assign as error the several rulings of the trial court to which exceptions were reserved.

R. H. CLARKE, for appellants.—The litigation in which the fund was paid into the chancery court having ended, it only remained for the court to order the payment of the sum belonging to appellees to their guardian when appointed, and to provide in the meantime for its safe custody, and, if deemed advisable, that it should earn interest by being loaned out. The register could have been properly charged with the duty of keeping and lending in his official capacity under the established practice of the chancery court. But the court undertook to use the money directly for the benefit of appellees, by ordering the register to buy a home for them and their mother, suitable, in his opinion, for them to occupy as a residence, taking the title to himself as their trustee and putting them in possession. If the duties so imposed upon him by the court properly devolved upon him as register, then his sureties upon his official bonds would have been liable for his failure to discharge them

[McPhillips *et al.* v. McGrath *et al.*]

properly, for carelessness as to titles and as to the location, fitness, condition and value of the houses, and for the want of proper care in securing suitable plans, good material and good work at reasonable cost. Had Hodgson merely held the money, there being nothing to show that he so held it for the purposes of the trust imposed upon it, the case would have been different. ' The fact that the orders and papers designate him as trustee is immaterial. But it is clear that he held the money for the trust, and admittedly applied nearly one-fourth of it in execution thereof. The functions so devolved upon him being without the scope of his legitimate duties as register, the sureties on his bond are not liable for the money entrusted to him for such purposes, and the demurrers to the 4th plea were erroneously sustained. 1 Chit. on Cont. 765 ; Addison on Cont. 1117 ; *Forward v. Marsh*, 18 Ala. 645 ; *Governor v. Perrine*, 23 Ala. 807 ; *Morrow v. Wood*, 56 Ala. 1 ; *Coleman v. Ormond*, 60 Ala. 328 ; *City Council of Montgomery v. Hughes*, 65 Ala. 201 ; *McKee v. Griffin*, 66 Ala. 211 ; *Collier v. Henderson*, 86 Ala. 279 ; 24 Amer. & Eng. Encyc. of Law, 879, par. 4 and cases cited in note 2 ; *Kerr v. Brandon*, 84 N. C. 128 ; *Rogers v. Odom*, 86 N. C. 432.

If the chancery court had not the power to impose upon Hodgson as register the duties growing out of the orders for the appropriation of the fund, his sureties are not liable. If it had such authority, or even authority to retain the fund in its registry for appropriation under its direction for the use of appellees, the circuit court cannot take it out without its sanction. So far as the record shows there are two lots of land purchased with a part of the fund which the court has ordered improved with the balance. Money collected upon the judgment appealed from will be transferred by the circuit court to its registry from that of the chancery court without the sanction of the latter. Any collection on the judgment should be paid to the clerk of the circuit court.—*Smith v. Redus*, 9 Ala. 99. The suit, if brought at all without an order of the chancery court, should have been in the name of Hodgson's successor.

The court will take judicial notice that Hodgson was register from prior to January 1, 1885 ; that his then term ended with the term of the chancellor in the fall of 1892, and that he was re-appointed October 3, 1892.

1 Wharton Ev. 324; 1 Brick. Dig. 805, § 22; *Timberlake v. Brewer*, 59 Ala. 108; *Sandlin v. Anderson*, 76 Ala. 403; *White v. Rankin*, 90 Ala. 541. The fund then went into the hands of Hodgson in a term preceding that in which the bonds sued on were made. Appellants are not liable unless a conversion was made after their execution of the first bond, to-wit, Dec. 1, 1893.—*Townsend v. Everett*, 4 Ala. 607; *Governor v. Robbins*, 7 Ala. 79; *Dumas & Co. v. Patterson*, 9 Ala. 484; *Governor v. Gibson*, 14 Ala. 326; *Williams v. Harrison*, 19 Ala. 277; *Moore v. Madison County*, 38 Ala. 670; *Whitworth v. Oliver*, 39 Ala. 286.

The burden was on plaintiffs below to show that the money was in Hodgson's hands as register on or after their execution of the first bond. If the facts proven raise the presumption that he then had it, that meets such obligation. The rule is clear that Hodgson being shown to have had $611.57 in hand December 6th, 1888, in the absence of evidence as to what he did with it from that date to December 1st, 1893, it will be presumed he had it on the last date, *if it was his official duty then to have it*, the presumption being founded on that of due performance of official duty.—*Governor v. Robbins*, 7 Ala. 79; *Dumas & Co. v. Patterson*, 9 Ala. 484.

If Hodgson had the money in hand at any time during appellants' liability on his bonds, it was not his duty to lend it out. They would be liable for interest only if he collected during that time interest on loans previously made, or loaned it out after their liability attached, or appropriated it to his own use after such date. The general charge instructed the jury to assess them with interest during the period that they might find that Hodgson had converted the money prior to their executing his bond if he continued the investment after such execution.

The 8th charge asked sought to limit their liability in that case to his collection of the interest after the making of such bond, and was refused. That complainant alleges that Hodgson, as register, had the principal sum sued for continuously in his possession and custody from the 16th of April, 1888, to the 29th of May, 1896. Upon that his sureties are not liable for interest until demand made and payment refused.—*Williams v. Harrison*, 19 Ala. 277. The burden was on appellees to establish

[McPhillips *et al.* v. McGrath *et al.*]

appellants' liability for interest, and their evidence is weak and inconclusive.—*Myers v. U. S.*, 1 McLean, 493.

BESTOR & GRAY and GREGORY L. & H. T. SMITH, *contra*.—Sureties are not generally liable for the default of the principal before the execution of the bond, and when an officer is reappointed, and gives a new bond, the sureties are liable for the amount of money shown by his books to be on hand. He is presumed to have the amount of money charged to him and the burden of proving the contrary is on the sureties.—2 Amer. & Eng. Encyc. of Law, 466 ; *Bruce v. United States*, 17 Howard 437 ; *Whitworth v. Oliver*, 39 Ala. 286.

A security is bound by the admissions of his principal, made in the performance of a duty required by law. *Chilton v. Parks*, 15 Ala. 673 ; *May v. Kelly*, 61 Ala. 489 ; *Phillips v. Brazeal*, 14 Ala. 752. Declarations of an officer of having money are conclusive against the sureties, if made while he was an officer.—*Dumas v. Patterson*, 9 Ala. 485.

"If an officer is his own successor [as Hodgson was] and prior to entering upon his second term, giving a new bond, reports that he has a certain sum of money in his hands, which report is made a matter of record, and at the end of the second term, fails to account for the money as reported, his sureties on the new bond are liable for the defalcation."—Baylies on Sureties, 152 ; *Morley v. Town of Metamora*, 78 Ill. 394.

BRICKELL, C. J.—The complaint, in which the appellees were plaintiffs, contains two counts. The first count complains of the breach of the official bond of one Joseph Hodgson as register in chancery of the chancery court of Mobile county, executed on the first day of December, 1893, in the execution of which the appellants joined as sureties. The second count complains of the breach of a like bond executed on the eleventh day of December, 1894. The facts from which a breach of the bond is deduced are the same in each count. The defendants pleaded several pleas, to the fourth and fifth of which demurrers were sustained, and sustaining the demurrers forms the matter of the first and second assignments of error.

The error of the argument in support of the fourth

plea, lies in the hypothesis upon which the plea proceeds—that the immediate operation and effect of the decretal order made by the court on the ninth of February, 1887, was the conversion of Hodgson into a trustee, relieving him from duty and liability as register, in respect to the money now the matter of suit. The money was paid into court on the thirty-first day of January, 1887, as the money of the plaintiffs, in the course of a pending suit to which they were parties. Of the duties of a register in chancery, one is that of receiving and safely keeping, until the court orders its disposition, money paid into court in the progress of pending causes. *Coleman v. Ormond*, 60 Ala. 328. During the interval from the payment of the money into court until the rendition of the decretal order, the money was in the custody of Hodgson as register—there was no other repository of it. The true construction of the order is not that it was intended to change this custody; but that it was intended upon the happening of future events to blend with his relation of register, that of trustee. Having received the money as register, and duty and liability in that capacity having attached, it was not contemplated that there should be displacement of it, until the trusts came into existence in accordance with the decretal order. The question, in principle, is not distinguishable from that which occurs when a personal representative—an administrator or executor— unites with his relation that of guardian for infant distributees or legatees. In such case, before he is relieved from duty and liability in the primary capacity of personal representative, and duty and liability as guardian attaches, there must be separation of the assets he intends to take and hold as guardian from the assets of the estate—there must be as to such assets a termination of authority as personal representative, and to them authority and duty as guardian must attach. *Davis v. Davis*, 10 Ala. 299; *Whitworth v. Oliver*, 39 Ala. 286. Until there was investment of the money in the purchase of real estate in obedience to the decretal order, the trust estate to which duty and liability as trustee would attach, could not come into existence; and until it came into existence, it was not contemplated that Hodgson should be relieved from duty and liability as register. In his reports to the court Hodgson may

have adopted the title of trustee in connection with that of register; but it was not by the title he chose to adopt, it is determinable whether duty and liability as trustee had taken place; this is determinable from the matter of the reports—from the facts they contained. The last of these reports showed an investment of a part of the money in the purchase of real estate, and having been confirmed, relieved him *pro tanto* from liability as register. This is now conceded, for the sum in controversy is the remainder of the money not shown to have been invested.

The fifth plea differs from the fourth only by adding the averment "that there had been no settlement of the trust vested in Hodgson by said order and decree of said chancery court, and no ascertainment of the balance, if any, due from him on account of his administration of such trust; and that this court has no jurisdiction to entertain such settlement, and to ascertain such balance." We agree that the liability of Hodgson as trustee is not involved in this suit, and that a court of law has not jurisdiction to take an account of his administration of the trust. But we cannot conceive of what concern Hodgson's administration of the trust, is to the defendants. So far as Hodgson may have invested the money in his hands as register in the creation of the trust estate, he was relieved from liability as register, and the sureties on his official bond were also relieved. For his administration of the trust estate, the defendants are not answerable—in no event, are they liable except for his delinquencies as register.—Mechem on Public Officers, § 285; Brandt on Suretyship, § 528; *McKee v. Griffin*, 66 Ala. 211. The money now in controversy, was not part of the trust estate—it was never in Hodgson's keeping as trustee—and not having been invested in obedience to the decretal order, it remained as it was paid into court, and as it was received by Hodgson; the money of the plaintiffs. There was no error is sustaining the demurrers to these pleas.

Hodgson held the office of register for several successive terms. The term continuing when the money was paid into court, and when he made the last report that he had the money in his hands, subject to the order of the court, expired six years before the execution of the bond mentioned in the first count of the complaint, and

five years before the execution of the bond mentioned in the second count. The general principle is, in the absence of statutes providing otherwise, or of express stipulations in the bond, that sureties on official bonds are not liable for the defaults or delinquencies of the principal occurring before the execution of the bond. Mechem on Public Officers, § 285; Brandt on Suretyship, § 526; *Townsend v. Everett*, 4 Ala. 607; *Governor v. Gibson*, 14 Ala. 326; *Williams v. Harrison*, 19 Ala. 277. With respect to this principle, there is general, if not unbroken concurrence of authority. Nor is there departure from it, because for successive terms, the principal was the incumbent of the same office. The sureties upon the last bond, so far as is practicable, must be treated and considered, and the extent of their obligations determined, as if the principal had not been the incumbent for the preceding term—as if he was not his own successor.—*Townsend v. Everett*, *supra*; *Farrar v. U. S.*, 5 Peters, 373–389; *U. S. v. Boyd*, 15 Peters, 187; *Bissell v. Saxton*, 66 N. Y. 60; *Detroit v. Weber*, 29 Mich. 24; *Vivian v. Otis*, 54 Wisc. 518; s. c. 1 Am. Rep. 199; *Rochester v. Randall*, 105 Mass. 295; s. c. 7 Am. Rep. 519. This principle is substantially embodied in the eighth instruction requested by the defendant, and the instruction, if not abstract, should have been given. The instruction was not abstract, if there was evidence having a reasonable tendency to support the hypothesis on which it proceeds.

Hodgson was without authority to employ the money otherwise than in the purchase of real estate, or in the improvement of the real estate he had purchased. This was the scope and extent of the authority conferred on him by the decretal orders of the court, which was the measure of his authority and duty. If the money was not so employed, the only duty resting upon him was the keeping of it safely, subject to the orders of the court. He was without authority, as he was without duty, to lend the money, or invest it otherwise than as the decretal orders prescribed. The want of authority to lend, he recognized in one of the reports made to the court, stating that he made a loan of the money, pending negotiations for its investment in real estate, and accounting for the interest received. Though the loan was unauthorized, he was bound to account for the in-

terest received. Public officers, like other trustees, can
not make profit for themselves by the use of trust
moneys.—Brandt on Suretyship, § 534. Confined in
authority and duty to the investment of the money in
the purchase and improvement of real estate, a loan, or
any other investment of it, of itself, and in itself, would
constitute a conversion, involving him and the sureties
on his existing official bond in absolute liability.—*Ger-
ald v. Bunkley,* 17 Ala. 170. That Hodgson had not
employed the money, now the subject matter of suit, in
the purchase and improvement of real estate, is not
matter of controversy. If the money had been so em-
ployed, it could not have remained in his keeping as
register, and that it so remained, is the fundamental
fact on which the plaintiffs base a right of recovery.
There was evidence of an admission or declaration made
in June, 1895, that he had the money invested, but the
character of the investment, or the time of making it,
does not seem to have been matter of inquiry, and was
not stated. The material inquiry is, whether the in-
vestment was made prior or subsequent to the execution
of the bonds mentioned in the complaint, and upon this
inquiry, the declaration or admission, sheds but a feeble
if any light—it is consistent with an investment made
at any past time. Hodgson had not at any time prior
to 6th December, 1888, suffered the money to lie con-
tinuously in his hands a barren and unproductive fund—
he had made investment of part of it, and pending ne-
gotiations for the investment had loaned the money ac-
quiring interest, and for interest received on a loan, in-
creasing the fund to the sum now sued for, he charged
himself in the last report to the court. In *Governor v.
Robbins,* 7 Ala. 79, a suit against the sureties on an ad-
ditional or renewed bond of a sheriff for moneys col-
lected by the principal prior to the execution of the
bond, it was said by COLLIER, C. J.: ''All reasonable
presumptions favorable to a performance of official duty
are indulged, and it can not be inferred from the receipt
of money on an execution by a sheriff, that he has con-
verted it. If it had been shown that previous to the
execution of the bond in suit, the principal of the de-
fendants had appropriated the amount collected by him,
then the first set of sureties only would have been liable.
But the proof does not show such to have been the case;

the liability to an action does not appear to have been fixed until after the renewed bond was executed." It must be observed of this case, as was explained in the subsequent case of *Dumas v. Patterson,* 9 Ala. 484, that the sheriff was not in default for failing to pay over the money, until there was demand of it, or of some evidence that he had converted it to his own use. In *Townsend v. Everett. supra,* an action on the bond of a defaulting county treasurer, it was said, that the fact that the principal had not made annual settlements as required by law, and did not make a settlement until after the execution of a second bond, was not conclusive that there was a misappropriation of the money ·of the county previous to that time. ORMOND, J., said: "Nor does it follow, that because the treasurer may have faithfully disbursed all the monies received by him, since the date of the last bond, that he had before that time wasted or misappropriated the monies previously received by him; *non constat,* but that the monies previously received, were in the county treasury at the time the last bond was executed. A strong presumption that such was the fact arises from his report a few days afterwards, in which he admits a larger sum to be in the treasury of the county, than the defalcation fixed by the jury at the trial." In *Williams v. Harrison, supra,* in considering whether there was a presumption that a guardian had on hand, at the execution of a second bond, moneys which he ought to have had, DARGAN, C. J., after reference to the case of *Myers v. United States,* 1 McLean, 493, in which McLEAN, J., denied that there was any presumption as against the sureties on a second official bond, that moneys which came to the possession of the principal while a former bond was of force, was in his hands when the second bond was executed, said: "I do not, however, intend to assert the rule as broadly as was done by Justice McLEAN, for the inference of one fact from another is a question for the jury, and if the jury were to find even as against a security, that a sum of money was on hand at a particular time, and this by inference from the fact alone, that it had been received by the principal at a time prior, I should not be disposed to disturb their verdict, if there was no proof to weaken or rebut the presumption. But if the money had been received a

considerable time prior to the point of time at which it was sought to show that the money was in hand, and they were to refuse to draw the inference that it was on hand at this subsequent time, I should be entirely satisfied with their verdict, and would not set it aside. But when there are other circumstances in evidence tending to weaken this presumption, and showing a probability that the money had been used by the principal before the surety became bound, it would be very wrong for a court or jury to draw the presumption against the probabilities of the case, for the purpose of charging a surety." This seems to us the better doctrine in reference to this question, embarrassed by much of conflict and dissension of judicial decision. Each case must be governed by its own particular facts and circumstances. The number of years elapsing after the report by Hodgson that he had the money in keeping, taken in connection with the prior loans of it, manifesting a disinclination to hold it as an idle, unproductive fund, have a reasonable tendency to prove the facts hypothesized in the eighth instruction, and free the instruction from the objection of being abstract. It was for the jury to determine whether the money remained in Hodgson's hands at the time of the execution of the bonds, or either of them, on which the defendants became sureties. If it did not—if in the interval it had been loaned, or otherwise invested than in the purchase or improvement of real estate—the defendants are not liable. However he may have invested it, whether by loan or otherwise, if he subsequently, after the execution of the later bonds collected it, the defendants are liable ; and this by fair intendment, the instruction concedes.

We do not deem it necessary to say more in reference to the first instruction requested by the defendants, than that there is no aspect of the case in which it would have been justified. There is no legal presumption that the fund was converted or misappropriated by Hodgson, before the execution of the bonds on which defendants are his sureties, as there is no such presumption that until the execution of the bonds it remained in his keeping. The time of the conversion or misappropriation, is matter of inference to be drawn by the jury from all the facts and circumstances in evidence. When this is the state of the evidence, such an instruction would be

an invasion of the province of the jury.—1 Brick. Dig., 335, § 3. The second instruction requested is obnoxious to the like objection.

The matter of the remaining exceptions relates to instructions given or refused, as to the liability for interest on the fund in controversy. The general rule is, that a public officer is liable for interest from the time of a conversion or misappropriation of moneys entrusted to his keeping, and he is liable, also, if he unlawfully retains moneys in his hands, during the period of the unlawful detention.—11 Am. & Eng. Encyc. of Law, 398, note. As in the case of trustees, there must be some element of a breach of trust in the transaction, or a breach of duty.—Perry on Trusts, § 468. As we have already said and repeated, any other employment of the money than in the purchase or improvement of real estate, was a conversion, and that if such conversion occurred before the execution of the official bonds on which defendants are sureties, they are not liable. The instruction given by the court *ex mero motu*, authorizes the jury to award interest against the defendants from the time of such conversion, from the time he had invested the money by loan or otherwise, if such loan or investment was continued after the execution of the first of the bonds on which defendants are sureties. Doubtless, Hodgson is liable for interest from the day of the conversion—from the day of the unauthorized loan or investment—but such liability cannot be visited on the defendants because the investment was continuing at the time they became Hodgson's sureties. The investment was a past act—a past breach of official duty—for which the defendants are not liable.

The fourth instruction requested by the defendants, is predicated upon the hypothesis that Hodgson could have accounted for the principal only to his successor, and that of consequence liability for interest would attach only on the appointment of a successor. Hodgson's liability was to the plaintiffs only, and whatever of duty he was bound to perform was owing only to them. The duty, and the only duty Hodgson owed his successor, was that owing by every public officer, as prescribed by the statute (Code of 1886, § 301) ; the delivery on demand of all books, papers, property and money, belonging or appertaining to the office.

[Pierce v. Court of County Commissioners of Elmore County.]

The fifth instruction requested by the defendants proceeds on the hypothesis that a demand of payment, and a failure or refusal to pay, without legal excuse, was necessary to create a liability for interest. As a general proposition, a demand of payment is necessary to fix upon a public officer a liability for interest. But if there has been a conversion or misappropriation of the money, a demand is not necessary; the presumption is, it would be unavailing if made.

The sixth and seventh instructions, in the view we have expressed of the liability of the defendants, should have been given. If Hodgson had the money in his keeping at the execution of the first bond, the liability of the defendants for it then accrued, and in no event could they be liable for interest at any earlier period.

For the errors pointed out, the judgment of the court below must be reversed and the cause remanded.

Reversed and remanded.