167 So. 316

### SHELLEY v. THOMAS.

6 Div. 720.

Supreme Court of Alabama.

Feb. 20, 1936.

Rehearing Denied April 23, 1936.

Warren S. Reese, Jr., of Montgomery, for appellant.

Cabaniss & Johnston and Paul Johnston, all of Birmingham, for appellee.

KNIGHT, Justice.

Under the will of the late Mary J. Smith, an annuity of $200 was given to the appellant, payable out of the estate of the decedent, at all events during the life of the husband of decedent, "and in the event of his death prior to her death," that before a distribution of the estate of the decedent should be made, this annuity should be secured to the said Lula Hightower, now Lula Hightower Shelley.

Thereafter the payment of this annuity was secured by the payment into the registry of the circuit court, in equity, of the sum of $3,333.33, to be invested by the register of said court "by lending the sum on real estate situated in Barbour County."

The provision for the payment of the annuity was agreed upon by counsel representing all the parties' in interest, and the court ratified and confirmed the same by decree entered in the cause on January 19, 1923. This agreement of counsel and the decree entered thereon appear in the report of this case.

Twenty-two hundred dollars of the money was thereafter loaned by Hunter Armstrong, as register of the circuit court of Jefferson county, to H. C. and L. A. Sparks, secured by mortgage on real estate in the city of Eufaula, Barbour county, Ala., and the notes and mortgage were made payable "to Hunter Armstrong, as register of the Circuit Court of the Tenth Judicial Circuit of Alabama."

On June 22, 1931, the said mortgagors, H. C. and L. A. Sparks, paid the full amount of the mortgage indebtedness, to wit, $2,200, and the interest thereon, to the register of said court.

On June 23, 1931, the appellee, the successor to Hunter Armstrong in the office of register of the circuit court of Jefferson county, reported to the court the payment of this money to her, as such succeeding register. On this report the court made an order, which, in part, reads: "It is further ordered that the register of this court be and she hereby is directed to forthwith re-invest the said sum of $2,200.00, heretofore paid into the registry of this court by H. C. and L. A. Sparks in her discretion and at the best interest rate obtainable consonant with safety of the prin-

cipal." This decree was made and entered on June 23, 1931.

No attack is made on this decree, and both sides seem to be satisfied with it. Nor was there any appeal from it.

On November 15, 1934, the register filed her report in the cause, showing her acts and doing pursuant to the decree of June 23, 1931. In her report the register reported that, in obedience to the decree of June 23, 1931, she invested "with the Realty Mortgage Company, a corporation then and now doing (business) in the city of Birmingham, Alabama, the said sum of $2200.00 by purchasing twenty-two shares of six per cent. class 'A' preferred capital stock of said company." In this report the register stated that for more than twenty years this company had regularly paid dividends, and it was generally considered by the public that purchase of this stock was a safe and sound investment; that the investment was made in good faith· after careful investigation. She prayed that her acts and doings in the matter be ratified and confirmed.

On the day that this report of the register was filed, the court entered a decree confirming and ratifying the act of the register in investing the funds in the preferred stock of the Realty Mortgage Company. However, on the 10th of December, 1934, the appellant, through her solicitor, filed a motion to set aside the said decree and to permit her to file exceptions to said report. This motion was granted, and said decree was set aside.

The appellant, after the decree was set aside, filed a number of objections and exceptions to the report of the register. These exceptions appear in the report of this case.

On submission of the cause on the report of the register and the evidence offered by the register and the exceptions filed by the annuitant, the court made and entered a decree ratifying and confirming the report of the register. The second and last paragraph of which decree is as follows: "2. That the investment of the $2200.00 fund in class 'A' preferred capital stock of Realty Mortgage Company, referred to in said report, be and such investment is hereby approved as having been made in compliance with the decree of this court entered herein on June 23, 1931, and in good faith, and that such investment was a reasonable exercise of the register's discretion vested in her by said decree."

From this decree the annuitant, appellant, brings this appeal.

█ It is earnestly insisted that the register, in investing the funds in the preferred stock of the Realty Mortgage Company, did so in disregard of the provisions of section 74 of the Constitution and of section 10413 of the Code of Alabama, and was not made in good faith or in accordance with the terms of the decree authorizing the investment.·

The appellant's argument rather proceeds upon the theory that the appellee was a trustee of the funds, and, being such trustee, was bound to observe the mandatory inhibitions of section 74 of the Constitution against investments of any trust funds by *executors, administrators, guardians, or other trustees* in bonds or stock of *any private corporation;* and was likewise bound to observe the mandate of section 10413 of the Code; that, inasmuch as the register made the investment of the funds in stock of a private corporation, in disregard of both section 74 of the Constitution and of section 10413 of the Code, she acted at her peril, and must be held liable for the funds.

The appellant's argument is, as we see it, faulty in assuming that the appellee in making the investment was acting as a trustee of the funds. Her relation to these funds was not that of a trustee, but rather that of an agent of the court, and as such agent was subject to the direction of the court. 21 Corpus Juris, 751, p. 603. He is, as a matter of course, liable for money coming into his hands as register, but only as an agent of the court, and not as trustee.

There is so much in the case of Pickens v. Dwight, 4 S.C. 360, that commends it to the judicial mind, and directly bearing upon the question now before us, that ·we feel justified in quoting from it somewhat at length:

"Trusts are various. A debtor may be said to be a trustee for his creditor; a bailee is certainly one for his bailor, and an agent for his principal. Breaches of obligation in these relations may be relieved in the Courts of law. The rules · which equity prescribes for the administration of a technical trust cannot, to their full extent, apply to them. A Master in

Equity, in regard to the bonds committed to his charge, is the ministerial officer of the Court—the custodian of the treasury, holding it under its supervision, and disposing of the securities confided to him, under its direction, and in conformity with its course of proceeding; not only subject to its punishment for any wrong appropriation, or improper dealing, but responsible also to the party to whom loss may therefrom ensue. He does not hold the money in his hands as a trust, in the technical sense of the word, *but as the financial agent of the Court,* and where he has received it on a sale under proper authority, he stands in no different relation to it than a Sheriff or a Referee who has made it under proceedings in a Court of law. Money there paid *goes into the care of the Court, and is held subject* to its order; *and yet he cannot be considered a trustee in the meaning in which the term is sought to be applied to the Master* in the argument here." (Italics supplied.)

This court in the case of Coleman v. Ormond, 60 Ala. 328, in an opinion by Brickell, C. J., held: "In our system of chancery practice, the duties of a registrar, and of a master in chancery, as they were known in the practice of the English Court of Chancery, are blended, and devolved on the register.—Code of 1876, § 634. There are duties on him, not expressly defined and declared by statute, or by the rules of practice which have been prescribed by this court; but by the practice of the court from its earliest organization, which has prevailed so long, and has been so uniformly acted on, that it has become the law of the court. Of these duties is that of receiving and holding funds which are brought into court, until the court shall order their disposition. Whether money is paid into court as a tender, or otherwise, in the first instance, it is a necessity that it should be intrusted to the register. *There is no other officer so completely under the control of the court, and none within the scope of whose authority it would lie to receive it."* (Italics supplied.)

This court, in the case of McPhillips v. McGrath, 117 Ala. 549, 23 So. 721, clearly points out where the duties of the register with reference to funds in his custody end and those of the trustee begin.

In this case the court held that the funds were in legal contemplation in the custody of the register, as register, until they had been actually invested pursuant to the decree of the court, and that then the duties of the register ended, and the duties and liability of the register as trustee attached to the trust estate.

While the register is liable for all moneys coming into his hands, yet he is a mere agent of the court, and as such agent he holds the money for the court, and is answerable for any loss of the money by his wrongful acts, but, being an agent of the court, he must disburse the money as the court, his master, directs, and in doing so assumes no personal liability. 21 Corpus Juris, § 751, p. 603; People v. Randall, 73 N.Y. 416; Johnson v. Fleming, 116 Ky. 680, 50 S.W. 855. In fact, if he should refuse to comply with the orders of the court in making distribution of the fund, he could be held for contempt, and punished accordingly. 11 Corpus Juris, Clerks of Court, p. 884.

This being true, it would be an absurdity to hold him personally liable for complying with the orders of the court, however improvident the orders under which he acted may have been.

It therefore only remains to be determined whether Miss Thomas, as the register of the circuit court of Jefferson county, complied with the order of the court in investing the funds in preferred stock of the Realty Mortgage Company —not whether the order directing the investment was wisely or improvidently made.

In making the investment directed by the court's order of June 23, 1931, discretion was given to the register of the court. By that order this officer was directed "to forthwith reinvest the said sum of $2,200.00, heretofore paid into the registry of the court by H. C. and L. A. Sparks *in her discretion* and at the best rate obtainable *consonant* with safety of the principal." (Italics supplied.)

In making the investment, the court directed that the register should exercise her discretion. She was not, under such an order, bound by either section 74 of the Constitution nor section 10413 of the Code.

Under the circumstances of this case, so far as respect the duties, obligations, and liability of the register, the court must be regarded as the settler of the trust. Its directions the register was fully authorized to follow, and for following which

she assumed no personal liability, provided, of course, she was guilty of no bad faith or negligence.

The evidence offered on the hearing entirely acquits the register of any bad faith or negligence. The investment, under the evidence, was made in the preferred stock of a business concern that had a long record for meeting its obligations and paying promptly. It bore every evidence of being a sound and safe business concern. It paid full returns on money invested in it.

We think the register could well have construed the order of the court, as she did. We attach no controlling importance to the term "interest" as employed in the order. This but meant a direction to the register to invest the funds in such security or property as would bring the *highest return obtainable consonant with safety* of the principal.

However, upon the report by the register of her investment, and after a full hearing, the court entered a decree ratifying and confirming the acts of the register, and in the second paragraph of its decree it was decreed: "That the investment of the $2,-200.00 fund in class 'A' preferred capital stock of Realty Mortgage Company, referred to in said report, be and such investment is hereby approved *as having been made in compliance with the decree of this court entered on June 23, 1931, and in good faith, and that such investment was a reasonable exercise of the register's discretion vested in her by said decree.*"

This decree fairly supports the interpretation by the register of the power conferred upon her and the latitude of the discretion given by said decree. It certainly negatives any abuse of discretion.

What was said in the case of Hovey v. McDonald, 109 U.S. 150, 3 S.Ct. 136, 144, 27 L.Ed. 888, and which has heretofore been cited with approval by this court (North Birmingham Trust & Savings Bank v. Hearn et al., 211 Ala. 18, 99 So. 175), is here pertinent: "But if the court failed to do what it might properly have done, such failure ought not to be visited upon the receiver, who was the mere instrument and hand of the court, and subject to its order. It was his duty to obey the decree as made."

In a long line of decisions, it is established that, where the court has jurisdiction of the fund and of the parties, an officer of the court holding the funds for the court will be protected in paying out such funds by an order of the court. North Birmingham Trust & Savings Bank v. Hearn et al., supra; McPhillips v. McGrath, 117 Ala. 549, 23 So. 721; Davidson v. Wiley, Banks & Co., 31 Ala. 452; 11 Corpus Juris, pp. 897, 898, § 101.

We feel constrained to hold that under the decree of June 23, 1931, Miss Thomas, the register, was justified in making the investment complained of on this appeal, and, having done so, she should not now be penalized if the investment should turn out to be less safe than she had the right to think it was at the time she made it. We cannot affirm that, under the broad discretion given her by the decree under which she acted, she abused that discretion, or was guilty of any bad faith, or of any negligence.

Not only did the lower court exonerate her of any bad faith or negligence, but solemnly adjudged that she had properly interpreted its former decree, and accordingly ratified her acts and doings.

Our case of White v. White, 230 Ala. 641, 162 So. 368, was dealing with a different status from that here presented, and we have no intention to depart from the holding in that case. It is a sound exposition and interpretation of section 74 of the Constitution.

We are at the conclusion that the decree appealed from is due to be affirmed, and it is so ordered.

Affirmed.

THOMAS, BROWN, and FOSTER, JJ., concur.