THE PEOPLE ex rel. PETER MORRIS et al. Respondents, v..
SAMUEL H. RANDALL, Appellant.

Where, in proceedings supplementary to execution, an order is issued.
restraining a third person from disposing of property in his possession
belonging to the judgment-debtor "until further order in the premises,"
an order appointing a receiver is such further order; it is the final.
order in the proceedings, and any restraint thereafter desired should be
inserted in that order.

A fund being on deposit with the chamberlain of the city of New York to
the credit of a suit, in which H. was plaintiff, to which fund H. was.
entitled, he, by instrument in writing under seal, assigned and trans-
ferred the same to a trustee in trust to pay certain debts ; the trustee named
resigned in favor of D. who, with the consent of H., agreed to assume
the position, and thereafter acted as trustee. The relators, upon return of
an execution against H. unsatisfied, commenced supplementary proceed-
ings against him ; an order was granted requiring the chamberlain to
appear and be examined as to property of H. in his possession, and
restraining him from disposing of any such property "until further order
in the premises." Thereafter an order was granted in said proceedings
appointing a receiver of the property of H., and restraining him, and "his.

1878.]   People ex rel. Morris *v.* Randall.   417

Statement of case.

servants, agents and attorneys" from disposing or interfering with any property belonging to H. In these proceedings defendant, in form appeared as attorney for H., but in reality to protect the interests of the trustee, after the appointment of the receiver, defendant, acting as attorney for the trustee, obtained an order from H. directing the chamberlain to pay over the fund to D., and also obtained an *ex parte* order, without bringing to the knowledge of the court the restraining orders or the appointment of a receiver, directing the chamberlain to make such payment, which the chamberlain did, and the relators thereafter were unable to collect their judgment of H. For alleged contempt in disobeying and causing to be disobeyed said injunction orders, defendant was fined and ordered to be imprisoned until payment of the fine. *Held,* error ; that even if defendant had been unfaithful and abused the confidence of the court, the proceeding to punish for contempt was not the proper remedy, in this proceeding he could only be punished for violating the injunction orders ; that the order restraining the chamberlain was superceded by the final order appointing a receiver ; that the chamberlain also was justified in paying over the fund by the order directing him so to do, which was valid as to him ; that in procuring the fund from the chamberlain, defendant did not violate the restraining clause in the order appointing the receiver, as he did not act for H., but for D. the trustee, who was not restrained, and as the fund did not belong to H. ; that, although, the assignment by H. may have been void as to creditors not assenting to it, and could have been set aside by them, it was valid as between the parties and all assenting creditors, and divested H. of the property ; also that the procuring the order from H. was not an interference with the property of the latter, but simply aided the trustee in getting possession of property belonging to him.

(Argued April 1, 1878 ; decided April 23, 1878.)

Appeal from order of General Term of the Court of Common Pleas of the city and county of New York, modifying and affirming as modified an order of Special Term punishing Samuel H. Randall, an attorney, by a fine with imprisonment until paid for an alleged contempt.

The modification consisted in a reduction of the amount of the fine. The Special Term order imposed a fine of $7,187. The General Term reduced the amount to $3,076.50.

The facts appear sufficiently in the opinion.

*Samuel Hand* and *Samuel H. Randall,* for appellant. The legal title to the fund was not in Hiler but in the trustee under the trust deed of December 7, 1872. (*Dean* v. *Hyatt,*

N. Y. Gen. Term Sup. Ct.; 5 W. Dig., 71; *Ireland* v. *Smith,* 3 How., 244; *Richardson* v. *Rust,* 9 Paige, 243.) The question whether the appellant's act was willful was a proper subject of inquiry, and the act charged must be inconsistent with innocence. (*People* v. *Compton,* 9 N. Y., 263; 1 Duer, 512; *Hall* v. *L'Eptatinier,* 5 Daly, 534; *Leland* v. *Smith,* 3 id., 320; *Erie R. Co.* v. *Ramsay,* 45 N. Y., 637; *Weeks* v. *Smith,* 3 Abb. Pr., 211; *In re Metcalf* v. *Messenger,* 46 Barb., 325.) The presumption of innocence was in the appellant's favor, and the burden of proving an evil intent was on the moving party. (*Kerrains* v. *People,* 60 N. Y., 221; *Tracy* v. *McManus,* 58 id., 257; *Tallman* v. *Kearney,* 3 T. & C., 412; *Stover* v. *People,* 56 N. Y., 315.) The attorney's acts are to be judged in the light of the facts and circumstances as they existed when they were done. (*Vail* v. *Tuthill,* 4 W'kly Dig., 205; *Tuska* v. *O'Brien,* id., 179; *Von Waldhofen* v. *Newcome,* id., 228; *Godfroy* v. *Dalton,* 16 Bing., 468.) If the appellant was guilty of contempt, the long and unexplained delay of the relators in moving to punish for contempt after knowledge of the acts constitutes such gross laches as bar the proceeding. (*Upton* v. *Trebilcock,* 91 U. S. R., 55; *Flagg* v. *Ruden,* 1 Bradf., 195; Aug. on Lim., 10, 18, 96.) The receiver is estopped by his acts from prosecuting a contempt proceeding against the trustee or his attorney, or deriving any benefit therefrom. (*Mattoon* v. *Young,* 2 Hun, 559; *Kelly* v. *Scott,* 49 N. Y., 601.) To warrant the payment of the fine to Mr. Keiley, as receiver, he was bound to show title. (Old Code, § 298; *People ex rel. Sullivan* v. *Webber,* 5 Reporter, 395.) The General Term had no power to fix the amount of the receiver's judgment as the amount of the fine. (*Sudlow* v. *Knox,* 7 Abb. Pr. [N. S.], 411; *Erie R. Co.* v. *Ramsay,* 45 N. Y., 637.)

*D. M. Porter,* for respondents. The appellant was guilty of contempt in procuring the order of December 13, 1873, and in procuring Hiler to execute the papers to obtain the money. (*Parker* v. *City of Syracuse,* 31 N. Y., 376; *Wall*

1878.]     PEOPLE ex rel. MORRIS v. RANDALL.     419

Opinion of the Court, per EARL, J.

v. *City of Buffalo*, 1 Keyes, 193; *Field* v. *Mayor, etc.*, 6 N. Y., 179; *Muir* v. *Schenck*, 3 Hill, 228; *Richardson* v. *Ains-worth*, 20 How. Pr., 521; *Hutton* v. *Elwanger*, 4 Lans., 8; *Hull* v. *L'Eplatiner*, 49 How. Pr., 502; 5 Daly, 534.) Actual knowledge of what is intended to be enjoined may put a party into contempt although the injunction itself is insufficient to do so. (*Sullivan* v. *Judah*, 4 Paige, 444; *Hall* v. *Thomas*, 3 Edw. Ch., 236; *People ex rel. Morrison* v. *Brewer*, 4 Paige, 405; *Stafford* v. *Brown*, id., 360.) The assignment to Dusenbury was invalid, and he and the appellant were guilty of a fraud when they procured the money. (*Goodrich* v. *Downs*, 6 Hill, 438; *Woodburn* v. *Mosher*, 9 Barb., 255; *Strong* v. *Skinner*, 4 id., 546; *Hyslop* v. *Clark*, 14 J. R., 458; *Jarvis* v. *Babcock*, 5 Barb., 137.) The pretended assignment being a nullity, the title to the fund vested in the plaintiff as trustee for the judgment-creditors the moment he received the order appointing him. (*Tinkham* v. *Borst*, 24 How., 246; *Bost-wick* v. *Meuck*, 40 N. Y., 383; *Debendorf* v. *Dickenson*, 21 How., 275; *Ruttee* v. *Tollis*, 5 Sandf., 610; *Iddings* v. *Bruer*, 4 Sand. Ch., 417; *Duffy* v. *Casey*, 7 Rob., 79; *Mills* v. *Davis*, Ct. App. [Alb. L. J.], Feb. 7, 1874; *Getty* v. *Campbell*, 2 Rob., 664; *Anderson* v. *Van Allen*, 12 J. R., 343; Story's Eq. Jur., § 1232.) A trustee cannot divest himself of the obligations of the trust without an order of the court or the consent of all the *cestuis que trust*. (*Thatcher* v. *Condee*, 3 Keyes, 157; *Briggs* v. *Davis*, 20 N. Y., 15; *Plank* v. *Schermerhorn*, 3 Barb. Ch., 644; *Fitzgerald* v. *Topping*, 48 N. Y., 138. The finding of contempt, and fine imposed, were proper. *Hull* v. *L'Eplatiner*, 49 How., 502; 5 Daly, 534; *People* v. *Sturtevant*, 1 Duer, 571.)

EARL, J. For disobeying and causing to be disobeyed, as it is alleged, an injunction order issued by the New York Common Pleas, the defendant has been fined $3,076.50, and interest, from February 25, 1876, and ordered to stand committed to the common jail until payment of such fine. The

question before us is whether the facts authorized the imposition of such a punishment.

It matters not that the defendant's conduct in all the proceedings investigated in the court below may not have been altogether proper. It matters not that he may have been unfaithful as an attorney, and abused the confidence of the court and of his clients. For such misconduct this proceeding was not the proper remedy. In this proceeding he could be punished only for a violation of the injunction order of the court, and we must look at the facts to see if he was guilty of such violation.

In October, November and December, 1873, and January, 1874, there was a fund of about $7,000 on deposit with the chamberlain of the city of New York to the credit of the suit of *Hiler* v. *Hetterich*, which would have been payable to Hiler but for facts now to be stated. In December, 1872, such fund being then in existence, Hiler, by an instrument in writing under seal and acknowledging a consideration, sold, assigned, and transferred all his right, title and interest therein to one Haight in trust to pay the expenses and disbursements growing out of the trust, and then to pay certain specified creditors of Hiler, not including these relators ; and lastly, after such payments to hold the balance subject to the order of Hiler. Haight accepted the trust and continued to be trustee, making efforts to protect and secure the trust fund, until December 4, 1873, when, by an instrument in writing, he resigned his trust in favor of Charles Dusenbury and the latter accepted the trust, and agreed to assume the position of Haight under the assignment made by Hiler. This change was made by the assent of Hiler, and thereafter Dusenbury acted as trustee until the payment of the fund to him, as hereinafter stated.

Long prior to 1872, the relators, Morris and others, obtained a judgment against Hiler, and caused an execution to be issued thereon against him, which was returned unsatisfied. On the 13th day of October, 1873, Morris and others obtained an order in supplementary proceedings requir-

ing Hiler to appear and be examined on the 17th of October, and restraining him until the further order of the court from disposing of his property. He was examined in that proceeding; and on the 13th day of December an order was made in the same action requiring the chamberlain to appear and be examined as to the property of the judgment-debtor in his possession; and the order restrained him from transferring or making any other disposition of any property belonging to Hiler, or in which he was interested, or in any manner interfering therewith "until further order in the premises." The secretary of the chamberlain was examined under this order. Thereafter, on the 26th day of December, one Riely was appointed in such proceedings, the receiver of the property of Hiler; and in the order appointing him Hiler and his servants, agents, and attorneys were enjoined and restrained from interfering with, or making any disposition of any property belonging to Hiler. All these orders were known to Hiler, Dusenbury, the chamberlain, and Randall. In all these proceedings, Randall in form appeared for Hiler, but really acted to protect the interests of the trustee under Hiler's assignment.

On the 7th day of January, 1874, Randall, acting as attorney for Dusenbury, the trustee, obtained from the court an *ex parte* order directing the chamberlain to pay the said fund to the trustee. In obtaining this order Randall did not bring to the knowledge of the court the restraining orders which had previously been made, nor the appointment of the receiver. He had previously obtained an order from Hiler on the chamberlain also directing such payment, and, in pursuance of Hiler's order and the order of the court, the chamberlain paid the fund to the trustee; and the relators were not thereafter able to collect their judgment against Hiler.

The alleged misconduct of Randall was in the violation of the order of December thirteenth, restraining the chamberlain, and the order of December twenty-sixth appointing the receiver in which Hiler was restrained, as above stated.

Opinion of the Court, per EARL, J.

The order restraining the chamberlain was a mere prelimi-
nary or intermediate order.   It was not intended to be, and
could not be permanent.   It was in terms to continue only
" until further order in the premises ; "   and such further
order was made when the receiver was appointed.   That was
the final order and the consummation of the supplementary
proceedings ;  and any restraint thereafter desired should have
been inserted in that order.   As well might a preliminary
injunction in an action survive final judgment without the
further order of the court.   But the chamberlain had the
right to pay out this fund for another reason.   The order of
the Court of Common Pleas of January 7, 1874, ordering
him to pay the fund is a sufficient protection to him.   He
had nothing to do with its procurement, and was in no way
responsible for the manner in which it was procured.   As to
him it was a valid order, and superceded the prior restrain-
ing order made by the same court.

The only restraining order remaining was that contained
in the order appointing the receiver ;  and that restrained
" Hiler, and his servants, agents, and attorneys."   Did Ran-
dall violate that order ?   I cannot perceive upon the undis-
puted facts that he did.   He may have been sharp and unscrup-
ulous, he may have taken advantage of the relators and their
attorney, but did he violate the order ?   That is the sole ques-
tion.   In procuring this fund from the chamberlain, he did not
act for Hiler ;  he acted for the trustee.   The fund did not
belong to Hiler.   He had made an absolute transfer of it to
Haight ;  and in January, 1873, he had no interest whatever
in it.   The fund was not large enough to pay the debts
which the trustee was directed to pay out of it.   That
assignment may have been, and probably was void as to
Hiler's creditors who did not assent to it.   (*Goodrich* v.
*Downs*, 6 Hill, 438.)   They could have assailed it and set it
aside, and reached the property, but it was valid as between
the parties thereto, and as to all creditors who assented to it.
Hiler could not dispute its validity.   It divested him of the
property assigned as completely as if it were valid against

the whole world. He could not revoke or annul the assignment, or do any act to impair or affect the title of the assignee. This was not, therefore, his property ; and Randall, in procuring its payment to the trustee, did not act as Hiler's agent or attorney, or interfere with his property. There was no restraint upon the chamberlain, or upon him as attorney and agent of the trustee.

Hiler, when he gave the order on the chamberlain, did not interfere with his own property, but simply did an act not absolutely essential, but which aided the trustee in getting possession of property which belonged to him.

It may be that the transfer of the trust from Haight to Dusenbury was invalid. It certainly was invalid, unless all the creditors interested in it assented to the transfer. If all persons interested in the trust assented, it certainly was valid. If they were all satisfied, no one else could question it. If, however, the transfer was invalid, the title remained in Haight and was still out of Hiler.

But for another reason Randall was not guilty of violating either of these injunction orders. The one in terms operated only upon the chamberlain ; and the other only upon Hiler, his servants, agents and attorneys. Neither of these orders restrained Dusenbury or his attorney. Dusenbury was not a party to the action or proceeding in which the orders were made. He did not acquire his rights *pendente lite.* They were antecedent to the supplementary proceedings. He was an entire stranger to the orders, and hence was in no way affected by or bound to obey them, and Randall, as his attorney, was in the same position. (1 Barb. Ch. Pr., 634; *Batterman* v. *Finn,* 32 How. Pr., 501.)

We are, therefore, of opinion that the orders appealed from should be reversed, and that the motion should be denied, with costs.

All concur, except FOLGER and ANDREWS, JJ., not voting. Order reversed, and motion denied.