did, it would not aid the defendant in his position. The only way it can be determined whether or not a judgment of the Municipal Court is upon the merits is by an inspection of the minutes of the testimony taken. Stecher v. Ind. Order Free Sons of Judah, 45 Misc. Rep. 340, 90 N. Y. Supp. 332. It was error, therefore, for the court below to hold that the judgment of the first action was res adjudicata, and the judgment herein must be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

---

### In re ZIMMERMAN.

(Supreme Court, Appellate Division, Second Department. November 19, 1909.)

INJUNCTION (§ 228*)—VIOLATION—CONTEMPT—PERSONS LIABLE.

    A judgment restrained a defendant, his successors or assigns, and his servants or agents, from using a trade-name in a business. Several months later two persons entered into a like business under a similar trade-name. There was nothing to show that either of them were the agents or servants of defendant, or that they were acting for him or had any relation to him. A certified copy of the injunction had never been served on either of them, and one of them had never had any notice of its existence, while a circular had been sent to the other, telling him of the existence of the injunction. Held, that the two persons could not be punished for contempt for violating the injunction.

    [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 495; Dec. Dig. § 228.*]

Appeal from Special Term, Kings County.

In the matter of the application of Frank J. Zimmerman to punish Walter J. Meighan and another for contempt of court for violating an injunctional order. From an order finding defendants guilty of contempt, they appeal. Reversed.

Argued before WOODWARD, JENKS, BURR, RICH, and MILLER, JJ.

Herbert Peake, for appellants.
Frederick B. Maerkle, for relator.

WOODWARD, J. Prior to April 1, 1909, one Arthur H. Cross, doing business as W. H. Cross, was engaged in manufacturing and placing upon the market a bug exterminator. One Joseph Zima was at the same time engaged in a like enterprise, under the name of the Supreme Chemical Company. On or about the date mentioned Cross brought an action against Zima, sole defendant, for the purpose of restraining the latter from imitating the style of package used by Cross. Zima put in an answer, but went out of business soon afterward, and abandoned the defense; the result being that a judgment was entered restraining Zima, his executors, administrators, successors, or assigns, and his clerks, servants, agents, consignees, or dealers, from using the word "Success" or "Success Bug Exterminator," etc. On or about March 25, 1909, several months after Zima had abandoned the exterminator business, and a month or more after the granting of the in-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

junction above recited, Walter J. Meighan and Henry M. Larson, the appellants herein, entered into the business of making and selling a bug exterminator, under the trade-name of the Supreme Specialty Company, at No. 483 Gates avenue, Brooklyn, and used a label for their product which in some measure resembled that involved in the injunction in the action of Cross against Zima. About June 1, 1909, one Frank J. Zimmerman, claiming to be the successor of Arthur H. Cross, instituted this proceeding to punish Meighan and Larson for contempt of court for violating the provisions of the injunction granted in the action above mentioned, which resulted in the order appealed from, which imposed a fine of $50 upon each of them.

There is nothing in the papers before this court to show that either Meighan or Larson are the agents or servants of Zima, or that they are acting or pretending to act for or with him in this transaction, or that they have any relation to him whatever. Neither is there anything to show that a certified copy of the injunction has ever been served upon either of them, or that Larson has ever had any notice whatever of the existence of the judgment, while in the case of Meighan the only thing to connect him with the injunction is the alleged fact that a circular was sent to him at the address of Zima, telling him of the existence of such an injunction order. Under such circumstances there is no jurisdiction in the court to punish these men as for a contempt of court. The rule is laid down in 2 Spelling on Injunctions, p. 956, that:

"One not a party to a suit in which an injunction has issued, nor an agent of such party, and to whom such injunction is not directed, cannot be held in contempt, or be punished for the violation of the writ, although the act prohibited be illegal in itself."

And in Batterman v. Finn, 32 How. Prac. 501, it is said that, to make a person not a party to the action liable for disobeying an injunction, the person should bear such a relation to the defendant as to enable the latter to control his conduct. It was held in that case that the lessees of the defendant, who had been enjoined from interfering with a water power, could not be punished for violating that injunction; it not appearing that they were acting in conspiracy or collusion with the defendant. In Walton v. Grand Belt Copper Co., 56 Hun, 211, 9 N. Y. Supp. 375, it was held that an injunction could issue only against a party to the action; and the same doctrine was held in Marty v. Marty, 66 App. Div. 527, 73 N. Y. Supp. 369, while in People ex rel. Morris v. Randall, 73 N. Y. 416, Batterman v. Finn, supra, was quoted with approval, and it was held that a stranger to the restraining orders of the court was in no way affected by or bound to obey them. The authorities were fully reviewed in the comparatively recent case of Rigas v. Livingston, 178 N. Y. 20, 70 N. E. 107, and the court there held that the rule as above quoted was still the law of this state.

The order appealed from should be reversed, with $10 costs and disbursements. All concur.