WILLIAM H. W. YOUNGS, Plaintiff, *v.* CLARISSA GOODMAN and Others, Defendants.

WALTER G. HERBERT, as Ancillary Administrator of LOUISE MONTES, Deceased, Appellant; PHILIP BEROLZHEIMER, Chamberlain of the City of New York, Respondent.

First Department, July 14, 1922.

**Public officers — chamberlain of city of New York — sum representing proportionate value of inchoate dower of wife of party fixed under Code of Civil Procedure, § 1570 (Civil Practice Act, § 1053), and paid to chamberlain of city of New York — order reciting death of wife and made without notice to her administrator directing payment to husband is void on its face — chamberlain not protected by said order in payment to husband and must pay said sum to administrator of wife.**

Where, after the sale of property in a partition action, an order is made under section 1570 of the Code of Civil Procedure (Civil Practice Act, § 1053), fixing the value of the inchoate right of dower of the wife of one of the parties, and the sum so fixed is paid to the chamberlain of the city of New York, a subsequent order granted on the application of the husband which recites the death of the wife and does not show that notice was given to her representatives, directing the chamberlain to pay said money over to the husband is void on its face, since under the first order the money became the absolute property of the wife.

The chamberlain of the city of New York who paid the money over to the husband, as directed by said order, is not protected by the order, for it was not " duly made " as required by section 197 of the Greater New York charter, and, therefore, he will be directed to pay said money over to the administrator of the wife.

APPEAL by Walter G. Herbert from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 18th day of May, 1922, denying the application of said Walter G. Herbert, as ancillary administrator of the estate of Louise Montes, deceased, one of the defendants in the above-entitled action, for an order directing the chamberlain of the city of New York to pay to him, as such ancillary administrator, the sum of $1,628.99, with interest, which has accrued thereon, less lawful fees and commissions.

*Harry M. Lewy,* for the appellant.

*John P. O'Brien,* Corporation Counsel [*Henry J. Shields* of counsel; *John F. O'Brien* and *Walter B. Caughlan* with him on the brief], for the respondent.

GREENBAUM, J.:

The motion was predicated upon a certificate of the chamberlain of the city of New York, dated January 6, 1921, to the effect that

at that date he held to the credit of Louise Montes, in the above-entitled action, the sum of $1,628.99.

The facts are that George W. Adams, prior to 1912, died intestate, seized of a number of pieces of real property in the city of New York and leaving only collateral heirs.

Among the defendants in the partition action which followed were Harry E. Montes and Louise Montes, his wife, who then were and thereafter continued living separate and apart.

In the final judgment Harry E. Montes was adjudged to be entitled to a share of the proceeds of said partition action, namely, a 756/21168th part, less a gross sum due his wife in lieu of her right of dower.

The proceeds of the partition action were deposited with the chamberlain of the city of New York, to be held by him until the further determination and order of the court.

Pursuant to the terms of the final judgment Harry E. Montes petitioned the court to direct the chamberlain to pay to him and to Louise Montes, his wife, the respective sums due them thereunder. Thereupon and on July 22, 1912, an order was entered directing the chamberlain of the city of New York to pay, among others, as follows: To Harry E. Montes, $5,687.76; to Louise Montes, his wife, $1,633.81.

It is undisputed that by reason of the aforementioned order, the chamberlain paid to Harry E. Montes the amount to which he was entitled and that his wife never received the share apportioned to her, nor had she applied therefor.

Louise Montes died in Bergen county, N. J., August 6, 1920, without having in any way disposed of her share. Walter G. Herbert, her brother, was on January 4, 1921, appointed administrator of her estate by the surrogate of Bergen county, State of New Jersey, and on March 27, 1922, he was appointed ancillary administrator in the Surrogate's Court, New York county.

On January 29, 1921, Harry E. Montes, through his attorney, presented his verified petition to Special Term, Part II, Supreme Court, county of New York, and obtained an *ex parte* order wherein and whereby the order of July 22, 1912, was amended by directing the chamberlain of the city of New York to pay to Harry E. Montes the sum of $1,628.99 instead of to Louise Montes. Thereupon the chamberlain paid the sum of $1,628.99 to Harry E. Montes.

On June 20, 1921, Walter G. Herbert, as administrator of the estate of Louise Montes, duly moved at Special Term, upon notice, for an order to set aside, vacate and declare void the order of January 29, 1921. The motion was denied and on appeal this court reversed

the order and in all respects granted the motion. (199 App. Div. 281.) Leave to appeal to the Court of Appeals from the order of reversal was denied both by this court (200 App. Div. 906) and by the Court of Appeals. The opinion of this court, DOWLING, J., writing, pointed out that the court in the partition action had fixed the value of the inchoate right of dower of Louise Montes, pursuant to section 1570 of the Code of Civil Procedure* as prayed for by her husband, and stated: "Acting under this section, the court fixed the proportional value of the inchoate right of dower of Louise Montes at the sum of $1,633.81 and directed its payment to her out of the total amount awarded to her husband. That amount thus became her own property, absolutely and without condition or contingency. (*Bartlett* v. *Van Zandt,* 4 Sandf. Ch. 396; *Robinson* v. *Govers,* 138 N. Y. 425.)"

As matter of fact the administrator of the estate of Louise Montes had been appointed as such twenty-five days before Harry E. Montes applied for the *ex parte* order authorizing the city chamberlain to pay over to him the moneys set apart for his wife. The administrator was entitled to the possession of the fund deposited with the city chamberlain in the name of the intestate and should have had notice of the application for the order authorizing the chamberlain to pay the share of Mrs. Montes to her husband.

The learned Special Term justice who denied the motion under review relied upon *Matter of McNulty* (68 Misc. Rep. 93; affd., 144 App. Div. 894) and *People ex rel. Morris* v. *Randall* (73 N. Y. 416).

The chamberlain is a ministerial officer who is custodian of moneys on deposit subject to the order of the court by virtue of section 197 of the Greater New York charter (Laws of 1901, chap. 466) and section 745 *et seq.* of the Code of Civil Procedure (now Civ. Prac. Act, § 134 *et seq.*, except as transferred to State Finance Law, § 44-a *et seq.*, as added by Laws of 1920, chap. 929). Section 751 of the Code of Civil Procedure (now Civ. Prac. Act, § 137) provides: "No money, security or other property which shall have been placed in the custody of the court shall be surrendered without the production of a properly certified copy of an order of the court, in whose custody said money, security or other property shall have been placed, *duly made* and entered, directing such disposition." (Italics ours.)

The order presented to the chamberlain was not "duly made." On the face thereof it appeared that the party to whose credit

the moneys in question were deposited had died and that her legal representative had not been given notice of the application for said order.

In the *McNulty Case (supra)* it appeared that the city chamberlain had moneys in his hands which had been deposited for the benefit of one Catherine McNulty, an infant. Subsequently, a petition was presented to the court purporting to be signed by Catherine McNulty, the owner of the funds, accompanied by affidavits that the petitioner was the identical infant named in the proceeding in which the money was paid into court and that she was of full age. Thereupon and on the 13th day of May, 1904, an order was entered by the court " directing the chamberlain to pay to Catherine McNulty or her attorney the moneys in his hands to the credit of the petitioner."

In June, 1910, one Catherine McNulty Carroll sought to have the order of May 13, 1904, vacated asking for " an order directing the present city chamberlain to pay to her all moneys alleged to have been deposited to her credit with him in this matter, on the ground that she is the identical person named as Catherine McNulty, infant, in this proceeding, and that the moneys deposited to her credit have never been paid to her," alleging that the signature of Catherine McNulty affixed to the petition of May 11, 1904, was not hers and that she had never signed any affidavit or legal document for the purpose of acquiring moneys deposited with the city chamberlain.

The " present chamberlain " above referred to only entered upon his duties of office on January 4, 1910, and hence was not the chamberlain who had received the money originally and paid it out under the order of May 13, 1904. It would have been sufficient on that state of facts for the court to deny the motion upon the ground that the then city chamberlain could not be compelled to pay out moneys which had never come into his custody. It follows that so much of the opinion in the *McNulty* case as held that the former chamberlain was protected in paying out the infant's share under the order of May 13, 1904, was purely *obiter.*

In the case of *People ex rel. Morris* v. *Randall (supra)* a fund was on deposit with the chamberlain of the city of New York by order of the court to the credit of the action of *Hiler* v. *Hetterich,* for the benefit of the plaintiff Hiler. Thereafter Hiler transferred his interest in the fund to one Haight in trust to pay the expenses and disbursements growing out of the trust and also to pay certain specified creditors of Hiler. Haight accepted the trust and after a short time he resigned his trust in favor of one Dusenbury. Judgment

having been obtained against Hiler by one of his creditors an execution was issued against him and returned unsatisfied and thereafter supplementary proceedings were taken containing the usual injunctive clause restraining him from transferring his property " or in any manner interfering therewith until further order " of the court. At the conclusion of the proceedings a receiver of the property of Hiler was appointed. In this condition of affairs one Randall, who nominally acted as attorney for Dusenbury, the trustee, procured an *ex parte* order directing the chamberlain to pay said fund to the trustee. This order was obtained by Randall without disclosing to the court the facts as to the restraining order above mentioned or of the appointment of a receiver. The question before the court was, whether the attorney was subject to punishment for contempt of court for his conduct in thus obtaining the order. In the course of its opinion the court said: " The order restraining the chamberlain was a mere preliminary or intermediate order. It was not intended to be, and could not be permanent. It was in terms to continue only ' until further order in the premises.' " The court also held that the chamberlain had the right to pay the funds for the reason that " the order of the Court of Common Pleas of January 7, 1874, ordering him to pay the fund is a sufficient protection to him. He had nothing to do with its procurement, and was in no way responsible for the manner in which it was procured. As to him it was a valid order, and superseded the prior restraining order made by the same court."

It is to be observed that the court did not have before it the question of the rights of a person in whose behalf the money was deposited with the chamberlain but simply the question as to the effect of the order which relieved the chamberlain from the prior injunction which had been obtained against him.

The order of January 29, 1921, which was obtained without notice to the administrator of Louise Montes, recites the death of Louise Montes on August 6, 1920, at Hackensack, Bergen county, State of New Jersey. It seems to us that the court making the order of the 29th of January, 1921, was without jurisdiction so far as the administrator was concerned.

The moneys in question were deposited with the city chamberlain in the name of and to the credit of Louise Montes, who during her lifetime was the owner thereof, and upon her death her interest went to her legal representatives. The procurement of the order, without notice to her legal representatives after her death, disposing of her property without the knowledge or consent of her administrator, was not due process of law. The court did not acquire

any jurisdiction over the administrator of the deceased, Louise Montes, in the absence of notice to him and hence the order was void.

In *Day* v. *Bach* (87 N. Y. 56, 60) the court, discussing the effect of void and voidable orders, stated: " There can be no doubt of the general principle, that void or irregular process furnishes no justification to the party for acts done under it, with this limitation: that if the process is irregular only, so that it is merely voidable, and not void, it must be set aside or vacated before trespass can be brought. On the other hand, it is equally well settled that if the process was erroneous only, it protects the party for acts done under it while in force, and he may justify under it after it has been set aside." The opinion also states: " The authorities seem to establish these propositions: *First,* that a void writ or process furnishes no justification to a party, and he is liable to an action for what has been done under it at any time, and it is not necessary that it should be set aside before bringing the action (*Brooks* v. *Hodgkinson,* 4 Hurlst. & N. 712); *Second,* if the writ is irregular only, and not absolutely void, as for instance where an execution is issued on a judgment more than a year old, without a *sci. fa.,* no action lies until it has been set aside; but when set aside, it ceases to be a protection for acts done under it, while in force [citing cases]; *Third,* if the process was regularly issued, in a case where the court had jurisdiction, the party may justify what has been done under it, after it has been set aside for error in the judgment or proceeding; and an action for false imprisonment in case of arrest, or of trespass for property taken under it, will not lie."

The order under which the chamberlain paid the money to Harry Montes was void in its inception and afforded no protection to the chamberlain.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion for an order directing the city chamberlain to pay over as prayed for by the petitioner granted, with ten dollars costs.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.